**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| NELLIE RUTH GUNN, individually | ) | |
| and as Administratrix of the Estate of | ) | |
| GREGORY GUNN, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.:  2:16-cv-557-WKW-WC |
| | ) | |
| CITY OF MONTGOMERY, | ) | |
| ALABAMA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is the Motion to Dismiss (Doc. 20) and supporting memorandum (Doc. 21) filed by Defendants City of Montgomery and Ernest N. Finley, Jr., the Montgomery Chief of Police.  Plaintiff has filed a response (Doc. 30) in opposition to the motion, and Defendants have filed a reply (Doc. 35).  On August 10, 2016, the District Judge entered an Order (Doc. 19) referring this case to the undersigned Magistrate Judge "for consideration and disposition or recommendation on all pretrial matters as may be appropriate."  The motion is fully briefed and is ripe for recommendation to the District Judge.  For the reasons that follow, the undersigned Magistrate Judge RECOMMENDS that Defendants' motion be granted-in-part and denied-in-part.

## I.    BACKGROUND

Plaintiff, suing in her individual capacity and in her capacity as the Administratrix of the Estate of Gregory Gunn, filed suit against Defendants on July 8, 2016.  *See* Compl. (Doc. 1).  Plaintiff's complaint concerns the shooting death of her adult son, Gregory Gunn,

by Officer Aaron Cody Smith of the Montgomery Police Department.  The Complaint alleges, in exacting detail, the events and circumstances leading up to Smith's shooting of Mr. Gunn.  *See* Compl. (Doc. 1) at ¶¶ 12-82.  Because Smith is not one of the instant movants, however, these allegations need not be recounted here with the level of detail set forth in the Complaint.  It is sufficed for present purposes to offer only a brief summary of the "Facts" section of Plaintiff's Complaint.  Plaintiff alleges that Smith, on patrol alone in his vehicle in the very early morning hours of  February 25, 2016, confronted Mr. Gunn during Mr. Gunn's walk home from a friend's house.  Smith approached Mr. Gunn and initiated a "stop and frisk" of Mr. Gunn without any reasonable suspicion that Mr. Gunn was involved in criminal activity.  Mr. Gunn was not armed and Smith had no reason to believe he was armed.  During Smith's pat down of Mr. Gunn, Mr. Gunn fled in the direction of his home.  Smith, still lacking any reasonable suspicion that Mr. Gunn was involved in criminal activity, pursued Mr. Gunn on foot.  During his pursuit, Smith deployed a taser on Mr. Gunn at least three times even though Mr. Gunn had not threatened Smith and Smith had no reason to fear for his own safety.  Because Smith's tasing of Mr. Gunn did not cause Mr. Gunn to stop fleeing, Smith next struck Mr. Gunn several times with an expandable metal baton.  By the time Mr. Gunn reached his next-door neighbor's house, Smith brandished his service firearm and fired seven shots at Mr. Gunn, striking him five times, and killing him.  Mr. Gunn died in his next-door neighbor's front yard.

Plaintiff alleges several federal constitutional and state law causes of action against Smith and the instant Defendants, Chief Finley and the City.  Summarizing Plaintiff's claims, the Complaint alleges as follows: a) that Chief Finley and the City adopted and

implemented and/or ratified policies and procedures concerning citizen-police encounters and the use of force that violated the constitutional rights of citizens, or allowed a persistent and widespread practice or standard operating procedure in these regards that violated citizens' constitutional rights, and  that Defendants' actions caused the deprivation of Mr. Gunn's Fourth Amendment rights resulting in injuries and, ultimately, his death (Count Four); b) that Chief Finley and the City of Montgomery failed to train Smith as to proper policies and/or procedures with respect to citizen-police encounters and the use of force, resulting in deprivations of his Fourth Amendment rights and, ultimately, his death (Count Five); (c) that Chief Finley is liable for Mr. Gunn's wrongful death under Alabama law because Chief Finley breached his duty owed to Mr. Gunn to establish and implement proper and constitutional policies and/or procedures with respect to citizen-police encounters and the use of force and to adequately train Smith and other police officers under his charge in the application of such policies and procedures (Count Seven); and (d) that the City is vicariously liable for Mr. Gunn's wrongful death under Alabama law because of the actions of Smith and Chief Finley which, it is alleged, proximately caused the death of Mr. Gunn (Count Eight).

## II.   DEFENDANTS' ARGUMENT

Defendants argue that all of Plaintiff's claims against them are due to be dismissed. In particular, Defendants argue that Plaintiff lacks standing to bring any claims in her individual capacity against Defendants for the actions described in the Complaint, and that such individual capacity claims thus "fail to invoke the jurisdiction of the Court and are a nullity." Defs.' Mot. (Doc. 20) at 2.  Defendants further argue that Plaintiff has failed to

state any claim upon which relief could be granted in her representative capacity against both Chief Finley and the City.  *Id.*

## III.   PLAINTIFF'S INDIVIDUAL CAPACITY CLAIMS

The undersigned first addresses Defendants' argument that Plaintiff lacks standing to sue them in her individual capacity, and that such claims fail to invoke this court's jurisdiction.  Plaintiff explicitly "brings claims in her individual capacity for damages she sustained resulting from the death of her son, Gregory Z. Gunn[.]"  Compl. (Doc. 1) at ¶ 6. In support, Plaintiff alleges as follows:

> As a direct and proximate result of the actions and omissions of Defendants Finley and the City of Montgomery causing the violation of decedent Gregory Gunn's Fourth Amendment rights, Plaintiff Nellie Ruth Gunn individually has suffered severe emotional distress and mental anguish and other pain and suffering; lost regular financial support that the decedent, Gregory Gunn, had provided her; and lost the society and companionship of her son, with whom she had resumed a close family unit for multiple years before his murder, all of which suffering injuries, and damages will in reasonable probability continue into the future and for the remainder of Plaintiff Gunn's life.

Compl. (Doc. 1) at ¶ 206; *see also id.* at ¶ 227.  Plaintiff limits her individual capacity claims to her claims asserted under 42 U.S.C. § 1983.  *Id.*; *See also* Pl.'s Resp. (Doc. 30) at 14.  Defendants argue that Plaintiff may not recover damages in her individual capacity under 42 U.S.C. § 1983.  Defs.' Br. (Doc. 21) at 3-4 (§ 1983 "does not provide a remedy for persons because of the injury to others who have allegedly been deprived of their constitutional rights."); Defs.' Reply (Doc. 35) at 4-5.  Thus, they conclude, Plaintiff lacks standing to bring the claims alleged in the Complaint in her individual capacity.  *Id.*

In Alabama, "when a constitutional violation actually causes the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful death statute." *Estate of Gilliam ex rel. Waldrop v. City of Prattville*, 639 F.3d 1041, 1047 (11th Cir. 2011). As Plaintiff no doubt understands, given her express concession that the Complaint's state law wrongful death tort claim is not brought in her individual capacity, that statute, Ala. Code § 6-5-410, unambiguously confers the ability to bring a suit for wrongful death only in the "personal representative" of the decedent. *See* § 6-5-410(a). It is for this reason that this court very recently found that a plaintiff—decedent's minor child—lacked standing to pursue federal § 1983 claims related to the decedent's death, but that the decedent's personal representative could maintain such claims. *See Burns v. City of Alexander City*, 110 F. Supp. 3d 1237, 1245 (M.D. Ala. 2015) ("As to the § 1983 claims, *Gilliam* provides authority that Alabama's wrongful death statute applies by virtue of [42 U.S.C.] § 1988. Therefore, Plaintiff G.C. does not have standing to assert those claims under Alabama law as she is not the personal representative of [decedent's] estate."). *See also James v. City of Huntsville*, No. 5:14-cv-2267, 2015 WL 3397054, at *2-*3 (N.D. Ala. May 26, 2015); *Estate of Rowell v. Walker Baptist Med. Ctr.*, No. 5:11-cv-3439-RRA, 2012 WL 2479626, at *4-*5 (N.D. Ala. June 25, 2012) (recognizing that plaintiffs, none of whom were appointed as decedent's personal representative at the time federal suit was filed, lacked standing to assert § 1983 claims at the time the complaint was filed); *Christie v. Lee Cty. Sheriff's Office*, No. 2:10-cv-420-FtM-36DNF, 2011 WL 4501953, at *2 (M.D. Fla. Sept. 28, 2011) (finding, pursuant to similar provisions of Florida law, "no separate cause of

action exists under § 1983 for emotional distress, loss of a loved one, or any other collateral injuries allegedly suffered personally by the decedent's family members").

Thus, a plain reading of the statute and relevant case law forecloses Plaintiff's individual capacity § 1983 claims. The cases cited in Plaintiff's complaint in support of her individual right to recover her damages for the alleged violations of her son's constitutional rights, *see, e.g.,* Compl. at ¶ 206, are inapposite. *Carringer v. Rodgers*, 331 F.3d 844, 849 (11th Cir. 2003), and *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961), both dealt with and turned upon the unique characteristics of Georgia's wrongful death statute, which, it was determined, permits persons other than a personal representative of the decedent to seek and obtain damages for the wrongful death of the decedent. *See Brazier*, 293 F.2d at 409; *Carringer*, 331 F.3d at 847 (recognizing Georgia Supreme Court's affirmative answer to certified question about whether the plaintiff—decedent's mother—had standing to bring a wrongful death action where decedent was murdered by surviving spouse). Because the same cannot be said for Alabama's wrongful death statute, *Brazier* and *Carringer* do not advance Plaintiff's cause.

Nor do the additional cases cited by Plaintiff in her response brief demonstrate that she is entitled to bring § 1983 claims in her individual capacity and recover for her damages flowing from the alleged violation of the decedent's constitutional rights. *Rhyne v. Henderson County*, 973 F.2d 386, 390 (5th Cir. 1992), is cited as affirming *Brazier*. Pl.'s Resp. (Doc. 30) at 16. However, as Plaintiff recognizes, *Rhyne* simply applied Texas law in the same manner as *Brazier* applied Georgia law. Texas law is not the same as Alabama law. *See Rhyne*, 973 F.2d at 391 ("There is no dispute that Rhyne is within the class of

6

people entitled to recover under Texas law for the wrongful death of a child.").  Plaintiff cites two additional district court cases in Alabama in support of her position.  *See* Pl.'s Br. (Doc. 30) at 17.  However, these cases are distinguishable because neither addresses the standing of a plaintiff to bring individual capacity claims for damages flowing from the deprivation of the decedent's constitutional rights.  In *Weeks v. Benton*, 649 F. Supp. 1297 (N.D. Ala. 1986), the action, including all federal claims, was "brought by Lois Weeks as administratrix of the decedent's estate."  *Id.* at 1298.

Likewise, in *Lewis v. City of Montgomery*, No. 2:04-cv-858-WKW, 2006 WL 1761673, at *4 (M.D. Ala. June 27, 2006), the complaint consisted of a mix of federal § 1983 claims and state law tort claims brought by the decedent's wife in both her individual capacity and in her representative capacity as the administratrix of the decedent's estate. And, true enough, the court in *Lewis* did allow § 1983 claims seeking "recovery of compensatory damages from City," Pl.'s Br. (Doc. 30) at 17, to survive a motion to dismiss. *See* 2006 WL 1761673, at *4.  However, unlike in the instant case, in *Lewis*, the plaintiff did not allege that she was entitled to damages in her individual capacity due to the constitutional injuries inflicted on the decedent.  Rather, the complaint alleged such injuries "caused damage to Decedent in that it caused him to suffer pain, embarrassment, humiliation, extreme mental anguish and severe emotional distress and ultimately causing his death."  *See* Compl. (Doc. 1) at ¶¶ 61, 64, & 72, No. 2:04-cv-858-WKW (filed Sept. 10, 2004) (alleging injuries in specific federal law claims).  Where the plaintiff in *Lewis* brought claims in her individual capacity for her own damages, she was expressly proceeding under state tort law and, insofar as she did bring any such claims, they were not

premised on Alabama's wrongful death statute.  *See id.* at ¶ 80 (alleging plaintiff's own injuries in negligence claim) and ¶¶ 99-100 (alleging plaintiff's loss of consortium). Accordingly, it is of no great significance on the narrow question of the instant Plaintiff's standing to bring her individual capacity claims that the court in *Lewis* permitted that plaintiff's § 1983 claims against the municipal defendant to survive a motion to dismiss, or that the court permitted the plaintiff's own loss of consortium claim to stand.  There is no indication that the *Lewis* plaintiff brought any § 1983 claims in her individual capacity, and there was no dispute that she lacked standing to bring certain state tort claims in her individual capacity because those claims were not brought pursuant to Alabama's wrongful death statute.

Plaintiff lacks standing to assert any individual capacity claims under § 1983 for any injuries she suffered due to the alleged violation of the decedent's constitutional rights. Accordingly, such claims—namely, Counts IV and V of the Complaint—are due to be dismissed with prejudice to the extent they are brought in Plaintiff's individual capacity.

## IV.   PLAINTIFF'S REPRESENTATIVE CAPACITY CLAIMS

As set forth above, Plaintiff has filed claims in her representative capacity under both § 1983 and Alabama's wrongful death statute.  Defendants move to dismiss all such claims levied against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the basis that Plaintiff has failed to state any claim upon which relief could be granted.  Defs.' Mot. (Doc. 20) at 2.  Following a brief discussion of the standard of review applicable to a motion under Rule 12(b)(6), the court will examine each of Plaintiff's claims in turn.

When ruling on a motion pursuant to Rule 12(b)(6), "the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). In order to state a claim upon which relief could be granted, a complaint must satisfy the pleading standard of Rule 8 of the Federal Rules of Civil Procedure.

Rule 8 requires that a plaintiff submit a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In general, then, a pleading is insufficient if it offers only mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Thus, in order to survive Defendants' motion to dismiss, Plaintiff's complaint "'must contain sufficient factual matter, accepted as true, to 'state a claim for relief which is plausible on its face.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "A claim is factually plausible where the facts alleged permit the court to reasonably infer that the defendant's alleged misconduct was unlawful. Factual allegations that are 'merely consistent with' a

defendant's liability, however, are not facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that supports the claims alleged in the complaint, then the claim is "plausible" and the motion to dismiss should be denied and discovery in support of the claims should commence. *Twombly*, 550 U.S. at 556.  But, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.  Ultimately, in assessing the plausibility of a plaintiff's claims, the court is to avoid conflating the sufficiency analysis with a premature assessment of a plaintiff's likelihood of success because a well-pleaded claim shall proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

A.     **Count IV of the Complaint.**

Relying upon Plaintiff's summary of her claims, in Count Four, Plaintiff alleges that Chief Finley, as a "final policymaker for the City, established and implemented unconstitutional policies and procedures regarding citizen-police encounters and the use of force that were the "moving force" behind the death of Mr. Gunn. Pl.'s Resp. (Doc. 30) at 8-9.  Plaintiff alleges that Chief Finley is thus liable individually for his actions in establishing and implementing these alleged policies and procedures, and that the City is

liable "for having such policies and procedures that themselves violate federal law." *Id.* at 9. Alternatively, Plaintiff alleges in Count Four that, even if the policies and procedures established and implemented by Chief Finley do not violate the Constitution, there was a "widespread practice" among Chief Finley's subordinates in the MPD of conducting "illegal stops, frisks, and uses of force that became informal City policy," that Chief Finley "refused or failed to take steps reasonably necessary to prevent such violations," and that this "practice" caused Mr. Gunn's death. *Id.* Thus, Plaintiff alleges that Chief Finley is individually liable for his "deliberate indifference" to this unconstitutional practice, and the City is liable for its "custom or practice of constitutional violations that proximately resulted in the violation of Mr. Gunn's rights." *Id.*

Defendants maintain that Plaintiff has failed to satisfy the applicable pleading requirements with respect to her claims against both Chief Finley and the City. The court will discuss Defendants' arguments, and the sufficiency of Plaintiff's pleadings as to each Defendant, separately.

### 1. **Supervisory Liability as to Chief Finley**.

The Eleventh Circuit Court of Appeals recently restated how a plaintiff may go about establishing supervisory liability under § 1983.

> "[I]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted). Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation. *Id.*

11

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.
>
> *Id.* (internal quotation marks omitted) (citations omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation mark omitted). In short, "the standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone*, 326 F.3d at 1360 (alteration in original) (internal quotation marks omitted).

*Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1047-48 (11th Cir. 2014).

Plaintiff maintains that she has adequately alleged Chief Finley's supervisory liability in Count Four because she has "alleged facts showing a causal connection between defendant Finley's actions and the constitutional violations . . . based on (1) his failure to correct the constitutional violations following a history of widespread abuse of such rights, and (2) his formal policies or informal customs or policies resulting in deliberate indifference to constitutional rights."  Pl.'s Resp. (Doc. 30) at 20.  In support of this argument, Plaintiff points to many of the allegations set forth in the Complaint.  The court will review these allegations to assess their sufficiency.

In relevant part, Plaintiff alleges, "[u]pon information and belief," that Chief Finley "established and implemented policies and procedures, and/or ratified pre-existing policies and procedures, regarding field interviews, investigative stops, searches, frisks or pat-

downs, other police-citizen encounters, arrests, and the use of force by police against citizens[,]" and that these policies and procedures authorized police "to exercise authority beyond the constitutional limits of such activities" in a number of ways that effect violations of constitutional rights up to and including "use [of] deadly force on a subject when it is excessive, unnecessary, and objectively unreasonable as a matter of law to do so." Compl. (Doc. 1) at ¶¶ 196-197. Plaintiff then alleges that Smith acted pursuant to such policies and procedures when he confronted Mr. Gunn. *Id.* at ¶ 198. Plaintiff further alleges that, even if the formal policies and procedures allegedly established and implemented by Chief Finley do not themselves violate the Constitution, Chief Finley knew of or had constructive knowledge of the "widespread practice" among police officers of violating citizens' constitutional rights during police-citizen encounters, including "using deadly force on a subject when it is excessive, unnecessary, and objectively unreasonable as a matter of law to do so[.]" *Id.* at ¶¶ 200-202.

The sufficiency of these allegations turns, of course, on whether Plaintiff has alleged sufficient factual detail to render Plaintiff's claims plausible. Upon careful review of the Complaint and the parties' submissions respecting the motion to dismiss, the undersigned concludes that Defendant's motion to dismiss Count Four as to Chief Finley is due to be denied. Although the undersigned does not arrive at this conclusion lightly or without some trepidation about the nature of Plaintiff's claim, the undersigned concludes that Defendants simply have not shown that Plaintiff's allegations are actually insufficient under the prevailing standard.

13

Because Plaintiff can establish Chief Finley's liability through distinct avenues of proving deliberate indifference, and because the undersigned concludes that Plaintiff has adequately met her pleading burden with respect to at least one of those avenues, the undersigned addresses only the allegations and related argument concerning Plaintiff's claim that there was a history of widespread abuse that put Chief Finley on notice of the need to correct the alleged deprivations, but that Chief Finley failed to do so.   In her Complaint, Plaintiff alleges that, even if the policies and customs adopted or implemented by Chief Finley did not themselves violate the Constitution, there was "a widespread and persistent practice over many years, of City of Montgomery police officers violating citizens federally protected rights[.]"   Compl. (Doc. 1) at ¶ 201.  This "widespread and persistent practice" is alleged to have included several components, including the following: a) "making investigative stops for pretextual reasons," including to determine whether an "individual owes unpaid traffic fines or costs to the Defendant City," without the support of reasonable suspicion; b) "making investigative stops based on an unlawful racial profile;" (c) "frisking or patting down persons detained without reasonable suspicion" supporting such actions; (d) "using less-lethal force, including tasing or striking a subject, when it is excessive, unnecessary, and objectively unreasonable to do so;" and (e) "using deadly force on a subject when it is excessive, unnecessary, and objectively unreasonable as a matter of law to do so."   *Id.* at ¶ 200.  Plaintiff alleges that this "widespread and persistent practice" will be shown by "citizen lawsuits charging police misconduct; citizen complaints to the Police Department, the City of Montgomery, and elected officials regarding such misconduct; and the Police Department's limited internal

14

records of individual instances of application of these policies and procedures, such as investigative stops and incidents involving the use of force. *Id.* at ¶ 201. Plaintiff further alleges that Chief Finley has known or "had constructive knowledge of this widespread and persistent practice of violations, but [has] refused or failed to take measures reasonably necessary to prevent or minimize such violations." *Id.* at ¶ 202. Finally, in further support of this avenue of showing deliberate indifference, Plaintiff alleges that Chief Finley's response to the widespread practice described in the Complaint has been inadequate in several ways set out in the Complaint, including inadequate measures to identify and document unconstitutional uses of force, inadequate investigation of complaints of unconstitutional actions by police officers, and inadequate discipline of officers found to have committed violations. *Id.* at ¶ 203.

Defendants argue that Plaintiff has failed to meet her pleading burden with respect to any claim of supervisory liability as to Chief Finley in Count Four. Defs.' Br. (Doc. 21) at 5-6. As to the particular avenue of showing deliberate indifference discussed in the previous paragraph, Defendants argue, without citation to authority, that Plaintiff must plead factual allegations that "directly and specifically describe" "[a] history of obvious widespread, rampant, flagrant and continuing deprivations of constitutional rights rather than singular events attributed to Officer Smith[.]" *Id.*

As set forth above, Plaintiff's Complaint describes in detail the contours of the alleged widespread history of abuse necessary to place Chief Finley on notice of his need to correct the sort of deprivations described in the Complaint. The Complaint also alleges that Chief Finley failed to correct the alleged deprivations, and that his response to them

was inadequate in all of several ways specifically detailed in the Complaint. Nevertheless, Defendants assert that Plaintiff is required to plead specific allegations about some unspecified number of constitutional deprivations in order to sufficiently state a claim and proceed to discovery. In particular, Defendants demand that Plaintiff be made to specifically plead allegations about who filed the lawsuits or citizen complaints referenced in the Complaint, when they were filed, and what were the outcomes of any such filings or proceedings. *Id.* Defendants do not suggest how many such instances should be alleged and how specific Plaintiff's allegations must be. Rather, Defendants simply maintain that Plaintiff's "vague" reference to "citizen lawsuits" and "complaints" and the like that will demonstrate such incidents is insufficient to carry her pleading burden. Defs.' Reply (Doc. 35) at 11. Notably, Defendants cite to no cases imposing such a pleading burden on a plaintiff, and some courts have specifically rejected such a burden. *See, e.g., Threats v. City of Bessemer*, No. 2:13-cv-486-JEO, 2013 WL 2338701, at *5 (N.D. Ala. April 29, 2013) (Magistrate Judge's Recommendation), *adopted*, 2013 WL 2355341 (N.D. Ala. May 23, 2013) (finding widespread "pattern of misconduct" adequately alleged, despite fact that complaint "does not provide details of the prior alleged incidents or exactly how City policymakers became aware of them[,]" because specific details about prior incidents "would be largely within the knowledge of the City rather than Plaintiff, and both sides are entitled to utilize the liberal discovery of the FEDERAL RULES OF CIVIL PROCEDURE to flesh out the specifics" of Plaintiff's claims). And, to be sure, courts have affirmed that a plaintiff's reference to the sort of records identified by Plaintiff in this matter can be sufficient to put a supervisor on notice of a need to correct a problem and, therefore, at

least plausibly allege a history of widespread abuse for purposes of supervisor liability. *See, e.g., Danley v. Allen*, 540 F.3d 1298, 1315 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) (finding that complaint's allegation that supervisors were aware of widespread abuse through "'force reports and similar documents, inmate complaints, jailer complaints, attorney complaints, judicial officer complaints, and personal observation'" sufficiently stated causal connection to supervisor for purposes of motion to dismiss); *see also Harris v. City of Boynton Beach*, No. 9:16-cv-80148, 2016 WL 3971409, at *5-*6 (S.D. Fla. July 25, 2016) (finding complaint sufficient where plaintiff alleged that "public records requests, media reports, legal documents and reports and statements made by the police department" established that subordinate officers were reckless); *id.* (relying upon allegation that municipality "has repeatedly been the subject of numerous civilian complaints and investigations into police misconduct" in finding complaint sufficiently pleaded).

In any event, coupled with the omission of relevant authority in support of Defendants' argument about Plaintiff's supposed "heightened" (and apparently hyper-specific) pleading burden, Defendants' motion is especially problematic because Defendants appear to conflate Plaintiff's burden of proving her claim with her burden of merely sufficiently alleging her claim. For example, Defendants argue that the "mere existence of past grievances or complaints cannot serve as evidence of any actual wrongdoing by the City of Montgomery, its Police Department, Chief Finley, or any other individual police officer." Defs.' Reply (Doc. 35) at 11. The undersigned accepts this precept as generally true, but also irrelevant at this time because, of course, Plaintiff is not

required to bring "evidence" in support of her claims at the pleading stage. Defendants'
improper conflation of Plaintiff's pleading burden with her proving burden is confirmed
by Defendants' citation of, and extensive reliance upon, *Gold v. City of Miami*, 151 F.3d
1346 (11th Cir. 1998), which is the only case cited in support of Defendants' argument that
Plaintiff has insufficiently pleaded a history of widespread abuse.[1] *See* Defs.' Reply (Doc.
35) at 11-13. *Gold* appears to be cited for the proposition that "even if the Plaintiff argues
that a substantially higher number of complaints have been filed against Montgomery
officers and officials, this does nothing to show factual support for a widespread practice
of which the City should have known." *Id.* at 12. However, *Gold* is inapposite. *Gold*
concerned a district court's failure to grant judgment as a matter of law that was made by
a municipal defendant "at the close of Gold's evidence, renewed at the close of all
evidence, and made again post-trial." 151 F.3d at 1349. *Gold* thus says nothing about a
plaintiff's burden to sufficiently plead a claim of supervisory (or municipal) liability. The
*Gold* court faulted the plaintiff for failing to present—at trial—"evidence of prior
constitutional violations or false arrests involving Florida's disorderly conduct statute." *Id.*
at 1351. As recognized by Defendants, the Eleventh Circuit further found that Gold's
reliance on mere complaints of misconduct, or raw data showing a significant number of

---

[1] Defendants also cite to *Harper v. Lawrence County, Alabama*, 592 F.3d 1227 (11th Cir. 2010),
in their reply brief for the proposition that Plaintiff's "vague references" to civilian complaints and
the like "do not come close to the heightened pleading standard of specific allegations of prior
misconduct needed to sufficiently plead the existence of a custom or policy illustrated in *Harper*."
Def.'s Reply (Doc. 35) at 11. This is ground thoroughly plowed earlier in Defendants' Reply, *see*
Doc. 35 at 6-9, and it is well-taken in the context of that earlier (and appropriate) discussion about
Plaintiff's failure to fully relate the basis for the Circuit's holding in that case.

disorderly conduct arrests were dismissed, was insufficient as a manner of *proving* his claims at trial. *Id.* At no point did the Circuit Court indicate that relying on such materials was improper at the pleading stage.

In light of the foregoing, Defendants' argument that Plaintiff "has pled significantly less than the plaintiff in *Gold,* who was held to have provided insufficient support of a practice that could give rise to municipal liability[,]" Defs.' Reply (Doc. 35) at 12, is both misleading and irrelevant because the Eleventh Circuit did not say, and we do not know, what the plaintiff in *Gold* actually pled in support of her claims and, in any event, the sufficiency of Gold's pleadings was not relevant in the Circuit's decision. While *Gold* may portend difficulties for Plaintiff's proof of her claims at a later stage in this litigation, it has no bearing upon Defendants' motion to dismiss.

Ultimately, where Defendants argue that "Plaintiff in the instant case does not come remotely close to pleading the factual support required for a claim of widespread practice[,]" Defs.' Reply (Doc. 35) at 12, the court reasonably expects citation to judicial opinions demonstrating that, indeed, Plaintiff has not "come remotely close" to meeting her burden.  Defendants have not provided any such authority.  In the absence of any controlling authority provided by Defendants, the undersigned finds the Eleventh Circuit's decision in *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016), instructive as to where the court should discern the point at which Plaintiff has alleged sufficient facts to "nudge[ her] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570.  In *Hoefling*, the plaintiff, a boat owner whose boat was confiscated and destroyed by the City of Miami, "alleged that the City had a 'policy, custom, and/or practice' of

'failing to abide by' the state laws, regulations, and procedures governing the 'investigation and . . . removal of derelict vessels located in state waters[,]" and that, pursuant to this "policy, custom, and/or practice, [the defendants] ignored [his] fundamental rights, as well as the fundamental rights of other vessel owners." 811 F.3d at 1280. Apart from his specific allegations "concerning the seizure and destruction of his own sailboat," Hoefling's factual allegations in support of these claims were as follows:

> First, on August 20, 2010, while out of town, Mr. Hoefling received a call from a friend "notifying him that the police were taking boats." And, in fact, on his return, he discovered that his own sailboat had been "unlawfully seized." Second, Mr. Hoefling alleged that "local mariners" told him, and that he was "independently aware, that others have fallen victim to similar conduct as a result of the City['s] and [the marine patrol officers'] failure to adhere to law and appropriate procedures regarding the investigation and destruction of potentially derelict vessels." Third, Mr. Hoefling alleged that the City refers to this "systematic roundup and destruction of ugly boats in its waters" as a "cleanup" program.

*Id.* So, in essence, Hoefling's allegations respecting the defendants' alleged deliberate indifference were sufficient because he alleged that he was advised by a friend that the police were "taking boats," that he had "independent" knowledge, as well as unspecified anecdotal accounts from other "mariners," regarding similar supposedly unlawful seizures by the defendants, and because all of the defendants' activities were allegedly under the auspices of some "'cleanup program.'" There were no specific allegations about other seizures, and no reference to prior judicial or other determinations that any such seizures were contrary to law. Hoefling's claims surely would have failed under the pleading standard imagined by Defendants in this case.

20

At bottom, applying ordinary "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, in the specific context of this case—where, as in *Threats*, *supra*, much of the information referenced by Plaintiff is in the possession of the City, and where Defendants have largely failed to support their argument with citation to cogent authority—the undersigned finds that Plaintiff has alleged sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports Plaintiff's claims. *Twombly*, 550 U.S. at 556. This is all that Rule 8 requires of Plaintiff at this stage. *Id.* Accordingly, the undersigned concludes that Defendants have failed to show that Plaintiff's claim of supervisory liability in Count Four is insufficiently pleaded, and their motion to dismiss Count Four as to Chief Finley is due to be denied.

### 2.    Municipal Liability as to the City.

The Eleventh Circuit very recently restated the method for establishing municipal liability under § 1983:

> As a municipality, the City cannot be held vicariously liable under § 1983 for constitutional violations committed by its officers. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 693–94, 98 (1978). [A plaintiff] must ultimately prove that the City had a policy, custom, or practice that caused the deprivation. *See e.g., City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir.2015); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir.2004).
> . . .
> *Monell*, the Supreme Court has explained, is a "case about responsibility," and is meant to limit § 1983 liability to "acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478, 480 (1986). There are, however, several different ways of establishing municipal liability under § 1983. A municipality can be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council). *See Monell*, 436 U.S. at 661, 694–95; *McKusick v. City of Melbourne*, 96 F.3d 478, 483 (11th Cir.1996). Municipal liability may also attach if final policymakers have acquiesced in a

> longstanding practice that constitutes the entity's standard operating procedure. *See Bd. of Cty. Commissioners v. Brown*, 520 U.S. 397, 403–04 (1997); *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 n.11 (11th Cir.1991). And a municipality can be held liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir.2002).

*Hoefling*, 811 F.3d at 1279.

As described in this Recommendation's earlier discussion of Plaintiff's allegations with respect to Chief Finley, Plaintiff's Complaint alleges that the City is liable because of its final policymaker's establishment and implementation of unconstitutional policies and procedures, or the policymaker's failure to take steps reasonably necessary to prevent violations comprising a widespread practice among City police officers. *See supra*; Compl. (Doc. 1) at ¶¶ 194-202. Because the undersigned finds, as with Plaintiff's claim against Chief Finley, that Plaintiff has met her burden of sufficiently pleading a claim of municipal liability in Count Four with respect to at least one of the methods described in *Hoefling*— *i.e.*, acquiescence in the history of widespread abuse discussed previously—the undersigned addresses only those allegations and arguments related to that avenue of establishing municipal liability.

Defendants argue that Plaintiff "fails to meet the pleading standard imposed upon the plaintiff" with respect to this claim because Plaintiff has offered only "labels and legal conclusions" regarding her claim of a widespread practice of abuse among Montgomery police officers and she has failed to "comply with the 'threshold identification' of a specific custom or policy[.]" Defs.' Br. (Doc. 210 at 7-8. As recognized by Plaintiff, Pl.'s Resp.

(Doc. 30) at 37, rather than citing to specific cases applying the relevant pleading burden that Defendants would have this court apply, Defendants appear to simply denounce all of Plaintiff's allegations as "mere labels and legal conclusions," and, the undersigned supposes, leave it to the court to put meat on the bones of their arguments.  In essence, therefore, Defendants are guilty of the very offense they charge against Plaintiff.  This is simply insufficient to sustain Defendants' burden in seeking the drastic remedy of dismissal pursuant to Rule 12(b)(6).  *Stephens v. City of Tarrant*, No. 2:16-cv-274-KDB, 2017 WL 34829, at *9 (N.D. Ala. Jan. 4, 2017) ("As movant, the City must establish that the Complaint does not sufficiently allege facts [in support of the plaintiff's claims], and it failed to meet its burden to do so.").

In any event, Defendants' argument concerning this issue in its reply brief largely tracks the argument that was made with respect to Chief Finley.  *See* Defs.' Reply (Doc. 35) at 15-18.  Defendants' *Gold* argument is revived, *id.* at 18, but it is just as immaterial in defense of the City as it was Chief Finley.  Defendants once again fail to cite any salient case dealing with the sufficiency of a plaintiff's pleadings in the context of alleging municipal liability due to the alleged acquiescence to a widespread history of abuse by municipal officers.[2]  Rather, Defendants simply maintain that Plaintiff has failed to plead

---

[2]  Defendants devote a healthy portion of their limited briefing in this area to a discussion of *Brown v. City of Fort Lauderdale*, 923 F.2d 1474 (11th Cir. 1991).  *See* Defs.' Reply (Doc. 35) at 17-18.  The plaintiff in that case was a police officer who sued his municipal employer "claiming that he was fired from his job as a police officer for the City of Fort Lauderdale because he is black."  923 F.2d at 1475.  The Court of Appeals held that Plaintiff had alleged sufficient facts to sustain his claim that the municipality employed a custom of racial discrimination in employment.  *Id.* at 1481.  However, as Plaintiff observes, "the allegations the Eleventh Circuit cites as reflecting a municipal custom appear instead to be a series of racially discriminatory actions targeting plaintiff himself, as opposed to a custom of discriminating against persons of plaintiff's race generally."

specific examples in support of her claim of widespread history of abuse, and that, therefore, she has failed to state a claim.  For the reasons already stated *supra*, the undersigned finds that argument unpersuasive.

Thus, the undersigned finds that Plaintiff has adequately stated a claim of municipal liability with respect to the City in Count Four, and that, accordingly, Defendants' motion to dismiss Count Four as to the City is due to be denied.

### B.   Count V of the Complaint.

Relying upon Plaintiff's summary of her claims, in Count Five of the Complaint Plaintiff alleges that Chief Finley, "with final authority to train police officers employed by the Montgomery Police Department, . . . failed to establish and implement proper City policies and procedures with respect to stops, frisks, searches, and use of force," or, alternatively, having "established proper policies" in that area, "tolerated without halting widespread informal City police practices that violated citizens' rights," and "failed to adequately train defendant Smith in proper policies and procedures in those areas[.]"  Pl.'s Resp. (Doc. 30) at 10.  Plaintiff maintains that the City is also liable "based on its policy, custom, or practice of providing inadequate training that proximately resulted in the violation of Mr. Gunn's rights."  *Id.*

Defendants once again argue that Plaintiff has failed to satisfy the applicable pleading standard with respect to her claims against both Chief Finley and the City.  The

---

Pl.'s Resp. (Doc. 30) at 37 n.9.  Considering the accuracy of this observation and the legal context of *Brown*, the undersigned fails to see how that decision is entitled to any significant weight in the analysis of the instant motion to dismiss.

undersigned has already set out the standards for assessing claims of supervisory and municipal liability under § 1983.  The undersigned will next describe the tests for those types of liability based upon an alleged failure to train municipal employees and will then merge discussion of Plaintiff's claim as it relates to both Defendants.

The Eleventh Circuit has clarified how the test for supervisory liability is applied in the context of a failure-to-train claim.

> [U]nder § 1983, a supervisor can be held liable for failing to train his or her employees "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397 (11th Cir. 1994) ("A supervisory official is not liable under section 1983 for an injury resulting from his failure to train subordinates unless his failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact and the failure has actually caused the injury of which the plaintiff complains." (internal quotation marks omitted)). Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had "actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights," and that armed with that knowledge the supervisor chose to retain that training program. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

*Keith*, 749 F.3d at 1052.  Similarly, with respect to a municipality, the Circuit Court has explained as follows:

> A municipality may also be liable under § 1983 when its employees cause a constitutional injury as a result of the municipality's failure to adequately train or supervise its employees.  *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1188 (11th Cir. 2011).  But, as with a municipality's customs or policies, "the inadequacy of . . . training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To make such a showing, "a plaintiff must put forward some evidence that the municipality was aware of the need to train or supervise its employees in a particular area." *Am. Fed'n of Labor & Cong. of Indus. Orgs.*,

25

637 F.3d at 1189. "[I]t must have been obvious that the municipality's failure
to train or supervise its employees would result in a constitutional violation"
and that "the city made a deliberate choice not to train its employees." *Id.*
(internal quotation marks omitted).

*Martin v. Wood*, 648 F. App'x 911, 914-15 (11th Cir. 2016).

A plaintiff may establish "deliberate indifference" in the failure-to-train context in
two ways: by showing a "pattern of similar constitutional violations by untrained
employees[,]" *Connick*, 563 U.S. at 62, commonly referred to as "prior pattern liability,"
or by showing, in a more narrow set of circumstances, that there is such an "obvious need"
for training because of the highly predictable consequences of failing to train in a given
area, *id.* at 63-64, commonly referred to as "single incident" or "obvious need" liability.

Plaintiff contends that she has adequately stated claims of supervisory and
municipal liability for failure-to-train under both the "prior pattern" and "single incident"
theories of deliberate indifference. *See* Pl.'s Resp. (Doc. 30) at 40-43, 60-61. Defendants
contend, "as a threshold matter," that Plaintiff's claim must fail because she "has not pled
any specifics of any training program—municipal or otherwise—that she now attacks."
Defs.' Reply (Doc. 35) at 19-21. Specifically, they argue that "Plaintiff fails to
acknowledge the clearly established law requiring her to plead the existence of a particular
course of conduct sanctioned by the City such that it can be said to have proximately caused
the alleged deprivation of constitutional rights." *Id.* at 21-22. However, the only authority
cited by Defendants as representing such "clearly established law," *City of Oklahoma City
v. Tuttle*, 471 U.S. 808 (1985), has no bearing on the motion to dismiss. In essence, with
*Tuttle*, Defendants repeat their error discussed with respect to their reliance on *Gold*.

In *Tuttle*, the Supreme Court reviewed jury instructions that were utilized by the trial court in a jury trial involving municipal liability for inadequate training. *Id.* at 823-24. Nothing in the opinion relates to assessing the sufficiency of that or any other plaintiff's allegations of municipal or supervisory liability for failure to train. Defendants appear to recognize this, variously citing the opinion as precluding, for instance, "one's ability to succeed on a claim of municipal liability based on the inadequate training of subordinates when he or she fails to assert the specific failures or malfeasance inherent within the training program he or she is attacking." Defs.' Reply (Doc. 35) at 22. But, of course, in deciding whether a plaintiff has adequately stated a claim, a court is not determining the plaintiff's "ability to succeed," or "'allowing a 1983 plaintiff to establish municipal liability,'" or "'impos[ing] liability.'" *Id.* (quoting *Tuttle*, 471 U.S. at 821). While *Tuttle* may certainly have some relevance in assessing the sufficiency of evidence that Plaintiff submits in support of her claims, it has no bearing upon the court's review of the sufficiency of her pleadings. Thus, Defendants have failed to provide any viable authority for their argument that Plaintiff is required to *plead* specific allegations with respect to the training program she challenges as inadequate.

Defendants also argue that Plaintiff has failed to plead sufficient facts implicating the "prior pattern" method of establishing deliberate indifference for an alleged failure to train. Defs.' Reply (Doc. 35) at 24-25. In support, they argue that "Plaintiff has failed to plead anything that allows this Court to properly infer there has a [sic] been a widespread practice of police officers or other officials violating the constitutional rights of citizens similarly to those of Gregory Gunn, such that [Defendants were] on *actual* notice that there

was a need to rectify the problem through alterations to its training of police officers." *Id.* at 25.

As set forth in the previous section of this Recommendation, the undersigned concludes that Plaintiff has sufficiently alleged a widespread practice of MPD officers violating citizens' constitutional rights in the manners described in the Complaint. For the same reasons, the undersigned finds Plaintiff's allegations sufficient to implicate the "prior pattern" avenue of showing deliberate indifference to the need to train municipal employees. Nevertheless, the undersigned acknowledges that, in a recent decision that Defendants curiously do not cite, the Eleventh Circuit concluded that, in order to sufficiently allege a "prior pattern" of similar constitutional violations by untrained employees, a complaint must provide some "'factual enhancement'" of an allegation that prior incidents provide the requisite notice of a need to train. *See Weiland*, 792 F.3d at 1329 n.21 (finding factual allegation that merely referenced prior "police shootings of the mentally ill" occurring in Palm Beach County insufficient to sustain a claim of that the Sheriff's Office maintained "a policy of not training its deputes in the appropriate use of force when seizing mentally ill citizens for transportation to mental health facilities"). To the extent *Weiland* arguably requires such allegations, and would therefore compel a finding that Plaintiff's claim is insufficiently pleaded with respect to "prior pattern" liability, Defendants still are not entitled to have their motion to dismiss granted.

This is so because "[e]ven if the Complaint does not sufficiently allege a prior pattern, the court should consider whether it sufficiently states a claim against [Defendants] for single-incident liability." *Stephens*, No. 2:16-cv-274-KDB, 2017 WL 34829, at *7. As

set forth above, Plaintiff argues that the Complaint sufficiently alleges Defendants' liability under this alternate theory, and, as best the court can tell, Defendants have not directly, or at least adequately, challenged this argument. *See, e.g.,* Defs.' Reply (Doc. 35) at 24-25 (proceeding from argument that Plaintiff "failed to plead anything that allows this Court to properly infer there has been a widespread practice" of similar constitutional violations "such that the City was on *actual* notice that there was a need" for training to argument that Plaintiff failed to sufficiently plead the existence of any error in the City's training program).[3]

This court has recently discussed the genesis and ongoing refinement of the "single incident" theory of liability.

> [T]he Supreme Court in *City of Canton* left open the possibility that "in a narrow range of circumstances" a plaintiff may proceed on a failure to train

---

[3]   It appears the closest that Defendants come to meeting Plaintiff's arguments about the applicability of "single incident" liability in this case is when Defendants quote from a section of Plaintiff's own response brief where she describes the circumstances when a defendant is charged with constructive notice of a need to train. *See* Defs.' Reply (Doc. 35) at 24. In particular, Defendants emphasize Plaintiff's concession that, where deliberate indifference is alleged "'without an earlier violation or pattern of abuse, . . . **it must have been a highly predictable consequence** that the municipality's training or supervision of its employees in that area would result in a constitutional violation.'" *Id.* (quoting Pl.'s Resp. (Doc. 30) at 40) (emphasis placed by Defendants). However, despite perhaps recognizing Plaintiff's argument in this regard, and perhaps even hinting at some dispute with any contention that the violations allegedly suffered by Mr. Gunn were "highly predictable," Defendants leave that thread dangling. *See id.* Elsewhere, Defendants arguably return to this thread, but only to assert, without citation to relevant authority, that because of Plaintiff's purported failure to allege any specific facts about deficiencies in whatever training program Smith supposedly completed, she has not pled any "deliberate conduct" on the part of Defendants pursuant to which it was "highly predictable" that Smith would act as he did. *Id.* at 28. If this argument is intended to rebut Plaintiff's meticulous and coherent argument for why "single incident" liability is applicable, *see* Pl.'s Resp. (Doc. 30) at 40-43, 60-61, it is too disjointed and ineffectual to assist the court. To the extent it was not intended to answer Plaintiff's argument on this discrete issue, then Defendants have failed to do so at any point in their briefing, and that failure alone warrants denial of Defendants' motion to dismiss. *See Stephens*, 2017 WL 34829, at *9 ("As movant, the City must establish that the Complaint does not sufficiently allege facts showing notice of the need to train and supervise, and it failed to meet its burden to do so.").

claim based upon a single incident of misconduct.  [*Board of the County Commissioners of Bryan County v.*] *Brown*, 520 U.S. [520 U.S. 397, 409 (1997)].  The *City of Canton* Court posed the hypothetical of a municipality that failed to train its police officers on the use of deadly force.  *See City of Canton*, 489 U.S. at 390, n.10.  It reasoned that, given the fact that policymakers know that police officers are required to shoulder deadly weapons and may be required to use them to protect the public from fleeing felons, the need to train police officers on the constitutional limitations of the use of deadly force would be so obvious that a failure to do so would amount to deliberate indifference. *Id.*

Eight years later, the Supreme Court in *Brown* clarified that a plaintiff could succeed on a theory of so-called "single-incident" liability if he alleged "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Brown*, 520 U.S. at 409. The *Brown* Court reasoned further:

> In leaving open in *Canton* the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, we simply hypothesized that, in a narrow range of circumstances a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right. The high degree of predictability may also support an inference of causation—that the municipality's indifference led directly to the very consequence that was so predictable.

*Brown*, 520 U.S. at 409.  Accordingly, single-incident liability is predicated on (1) the likelihood that a police officer will be confronted with a specific situation and (2) the predictability that an officer, when confronted with that situation, will violate a person's constitutional rights. *See id.*; *see also Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997) (quoting *Walker v. City of New York*, 974 F.2d 293, 299–300 (2d Cir. 1992), *cert. denied*, 507 U.S. 972 (1993)) ("It is not enough to show that a situation will arise and that taking the wrong course in that situation will result in injuries

to citizens . . . *City of Canton* also requires a likelihood that the failure to train or supervise will result in the officer making the wrong decision.")

*Davis v. City of Montgomery*, __ F. Supp. 3d __, __, 2016 WL 6661161, at *5-*6 (M.D. Ala. Nov. 10, 2016).

In addition to the well-pleaded allegations describing the killing of Mr. Gunn by Smith, Plaintiff alleges the following in support of her "single incident" theory of supervisory and municipal liability for Defendants' failure to train Smith:

> [A]t all times material to this complaint Defendants Finley and City of Montgomery have known to a great degree of certainty that City of Montgomery police officers will be (a) required frequently to make investigative stops, to frisk or pat down persons so stopped, and to arrest persons for alleged criminal activity; (b) required regularly to determine whether use of force is needed to effect an arrest or otherwise, and if so, whether to sue less-lethal or instead deadly force; and (c) required on occasion to use deadly force, to protect themselves or others from serious risk of immediate physical harm.

> The Defendant City having armed its officers with firearms (for deadly force) and also tools of less-lethal but still significantly harmful force (e.g., taser, metal baton), there is an obvious need for Defendants Finley and City of Montgomery to train officers in the constitutional limitations of the procedures—and especially on the use of deadly and less-lethal force—used in dealing with these recurring situations.

> Defendants Finley and City of Montgomery provided inadequate training to City of Montgomery police officers relating to the constitutional limitations relating to investigative stops, frisking or patting down persons so stopped, arrests, the permissible use of force, and the permissible use of deadly force, in at least the particular respects in which Defendant Smith violated Mr. Gunn's federal constitutional rights[.]

Compl. ¶¶ 221-223.

As has been noted previously, the "single incident" theory of failure-to-train liability is a narrow exception to the general requirement that a plaintiff show a "prior pattern" of

similar constitutional violations in order to sustain a failure-to-train claim.  Thus, courts are generally reluctant to impose "single incident" liability.  *See generally Whitaker v. Miami-Dade Cty.*, 126 F. Supp. 3d 1313, 1325 (S.D. Fla. 2015) ("The "single-incident liability exception is a narrow one and guidance is limited as neither the Supreme Court nor Eleventh Circuit has ever applied it.").  This lack of "guidance" deprives the court of significant, definitive authority concerning a plaintiff's burden in invoking this theory of liability at the pleading stage.  *Id.* at 1327 (reviewing cases limiting application of "single incident" liability and remarking that "[w]hile these cases (and many others) establish that *proving* a single-incident deliberate indifference claim for municipal liability is difficult, they do not specifically speak to the burden of *stating* such a claim.") (emphasis in original).  To be sure, in some cases courts have found plaintiffs' efforts to even plead single incident liability lacking.  *See, e.g., id.* (finding single incident failure-to-train claim allegations "conclusory" where complaint's only "well-pled" allegations described a high speed vehicle chase followed by police shooting of vehicle occupants); *see also Davis*, __ F. Supp. 3d at __, 2016 WL 6661161, at *6 (finding plaintiff "has not alleged facts to support an allegation that it is a highly predictable consequence of the City's failure to train that police officers would violate the constitutional rights of [speech and hearing impaired persons]").

But, considering all of the allegations in the Complaint, the undersigned is of the conviction that, at least with respect to Plaintiff's pleadings, this case is different.  To begin with, the allegations of the Complaint align neatly with the very hypothetical in which the Supreme Court first posited the "single incident" exception.  *See City of Canton*, 489 U.S.

at 390 n.10 ("For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be "so obvious," that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights."). And, as the Supreme Court remarked in later reinforcing the limited nature of the exception,

> [a]rmed police must sometimes make split-second decisions with life-or-death consequences. There is no reason to assume that police academy applicants are familiar with the constitutional constraints on the use of deadly force. And in the absence of training, there is no way for novice officers to obtain the legal knowledge they require. Under those circumstances there is an obvious need for some form of training.

*Connick*, 563 U.S. at 64. Thus, to the extent that Chief Finley, as is alleged by Plaintiff, made any decision not to adequately train Officer Smith in the "constitutional constraints on the use of deadly force," then Defendants may be found deliberately indifferent.

In this case, the well-pled factual allegations plausibly describe a scenario in which single-incident liability might lie. Defendants armed Smith, a white male, with lethal and non-lethal weapons and deployed him, alone, for overnight patrol in a predominantly African-American neighborhood. There, in the dark, he confronted Mr. Gunn, who was simply walking home, without reasonable suspicion to believe that he was involved in criminal activity. Rather than simply questioning Mr. Gunn, Smith immediately ordered him to submit to a pat-down. Although Mr. Gunn initially complied, when he lawfully fled toward the safety of his home, Smith began a pursuit during which he sharply escalated

through a continuum of force until he had shot and killed Mr. Gunn, all without ever having developed reasonable suspicion of criminal wrongdoing or reasonably believing that Mr. Gunn was a threat to Smith or anyone else.  While it is certainly one possible inference that Smith simply acted contrary to good training provided to him by Chief Finley and the City, that is not the only possible inference.  It is at least a plausible inference that Smith did not receive adequate training, particularly in the circumstances where the use of lethal force is constitutionally permissible, and that his lack of training was the "moving force" behind the alleged violation of Mr. Gunn's constitutional rights.  It is likewise a plausible inference that, given the well-pled allegations discussed above, a failure to adequately train Smith, coupled with the circumstances under which he was armed and deployed by Defendants, and especially considering his alleged charge to make pretextual stops for the purpose of learning whether citizens owe money to the City, made the resulting alleged violations of Mr. Gunn's rights predictable.

Whether the claim proceeds under the "prior pattern" or "single-incident" theories of deliberate indifference, Plaintiff's claim ultimately may well prove too difficult to establish.  But that is not the court's concern in judging the sufficiency of Plaintiff's pleadings.  *Twombly*, 550 U.S. at 556.  Accordingly, and considering Defendants' failure to substantively and forthrightly challenge Plaintiff's allegations concerning "single incident" liability, the undersigned concludes that Plaintiff has adequately stated a claim of supervisory and municipal liability based upon Chief Finley's and the City's alleged failure to adequately train Smith.  *See, e.g., Stephens*, 2017 WL 34829, at *9 (finding, in a case where the plaintiff alleged municipality failed to train police in the use of tasers, that

34

lack of published Eleventh Circuit authority on "whether on the use of Tasers fits within the 'so obvious' exception," coupled with the municipality's failure to "reply to this argument, "that the City has not met its burden on its motion to dismiss" the plaintiff's failure-to-train claim).[4]  As such, Defendants' motion to dismiss Plaintiff's supervisory and municipal failure-to-train claim in Count Five is due to be denied.

### C.   Count VII of the Complaint.

Count VII of the Complaint alleges that Chief Finley is liable for Mr. Gunn's wrongful death under Alabama law due to his conduct in establishing and implementing policies and procedures that violated federal and state law, and which led ultimately to Mr. Gunn's death, as well as for his failure to adequately train Smith.  Compl. (Doc. 1) at ¶¶ 243-61.  Defendants argue that Chief Finley is shielded from liability under Alabama law pursuant to state-agent immunity.  Defs.' Mot. (Doc. 21) at 14-15.  They further assert that

---

[4]   The undersigned recognizes the potential for dissonance between this Recommendation's findings that Plaintiff has adequately pled facts establishing a widespread history of abuse of constitutional rights, for purposes of her Fourth Amendment custom or policy claim, even if she has not alleged sufficient facts, pursuant to *Weiland*, to implicate "prior pattern" liability on her failure-to-train claim.  To reiterate, the undersigned believes that Plaintiff has also pled sufficient facts to implicate "prior pattern" liability, even under *Weiland*.  Plaintiff has alleged far more supporting facts than the passing reference to prior police shootings, which were not even alleged to constitute violations, at issue in *Weiland*.  Nevertheless, any dissonance should not be treated as fatal to Plaintiff's claim.  *Weiland* concerned a municipality's alleged failure to train, where, as the Supreme Court has remarked, a "municipality's culpability for a deprivation of rights is at its most tenuous[.]"  *Connick*, 563 U.S. at 61.  As such, it is no surprise that courts might impose a more rigorous pleading burden for claims premised on that form of "culpability," as did the court in *Weiland*.  In other domains of municipal liability, binding precedent suggests the pleading burden is more relaxed.  *See, e.g., Hoefling*, 811 F.3d at 1280-81.  Ultimately, though, the undersigned's discussion of the adequacy of Plaintiff's allegations with respect to single-incident liability is intended only to show that, even if *Weiland*, which was not cited by Defendants, is found to defeat Plaintiff's "prior pattern" theory of deliberate indifference, the Complaint's allegations are sufficient to plausibly allege a claim based on the alternative pathway for establishing liability for an alleged failure to train.

Plaintiff has not pled "any facts showing that Chief Finley acted willfully, maliciously[,] fraudulently, in bad faith, or beyond his authority, nor does she even imply any such acts or omissions occurred." *Id.* at 16.  In addition, they maintain that "Plaintiff fails to plead any facts showing that Chief Finley violated any provisions of the United States Constitution, the Alabama Constitution, or any other laws or rules" that would tend to defeat his claim of state-agent immunity.  *Id.*

Defendants' argument that Chief Finley is immune is based upon the Alabama Supreme Court's decisions in *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000), and *Howard v. City of Atmore*, 887 So.2d 201 (Ala. 2003).  *See* Defs.' Br. (Doc. 21) at 15.  In *Cranman*, the Alabama Supreme Court provided the following restatement of the "rule governing State-agent immunity:"

A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

> (1) formulating plans, policies, or designs; or
> (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
>> (a) making administrative adjudications;
>> (b) allocating resources;
>> (c) negotiating contracts;
>> (d) hiring, firing, transferring, assigning, or supervising personnel; or
> (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
> (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

792 So. 2d at 405. In *Howard*, the Court further clarified that the state-agent immunity provided for in paragraph two of the *Cranman* restatement included immunity against a claim that a police chief failed to adequately train his subordinate officers. 887 So. 2d at 210.

Plaintiff asserts that Chief Finley is not entitled to immunity under *Cranman*. Plaintiff points to several allegations in the Complaint leveling allegations addressed to Chief Finley's immunity defense. *See, e.g.*, Compl. (Doc. 1) at ¶¶ 249-250 (alleging that, in "establishing and implementing policies and procedures that authorize" police officers "to exercise authority beyond the legal limits" described in the Complaint, Chief Finley "acted beyond his discretionary authority or under a mistaken interpretation of the law" and contrary to "what is required by federal and state law); ¶¶ 258-259 (alleging that, in "providing inadequate training" to Smith, Chief Finley acted "beyond his discretionary authority or under a mistaken interpretation of the law" and "contrary to what is required" by federal and state law). Plaintiff argues that, insofar as Defendants do assert that all allegations against Chief Finley concern actions within his discretionary function, and are therefore subject to state-agent immunity, Defendants have failed to satisfy their initial

burden of proving that Chief Finley was in fact "engaged in performing a discretionary function."  Pl.'s Resp. (Doc. 30) at 82.  Furthermore, Plaintiff submits, Defendants do not "address or even mention two (2) of the three (3) immunity exceptions plaintiff did invoke" in her Complaint.  *Id.* at 84.  Namely, Plaintiff points to her allegations that Chief Finley's conduct is not shielded from immunity because he was "acting under a mistaken interpretation of law, and acting contrary to what is required by law."  *Id.* at 84-85.  In sum, she points to three ways in which it is sufficiently alleged that Chief Finley's conduct— just with respect to his failure to train Smith, since that is the only portion of Count VII that Defendants appeared to challenge in their motion—excepts him from state-agent immunity under Alabama law:

> Training City officers in policies and procedures that themselves violate the law, in that they authorize, permit, and do not prohibit several specified unconstitutional practices, is a paradigm example of "acting contrary to what is required by law," and thus conduct on Finley's part that is not protected by immunity.  Alternatively, training that authorizes, permits, and does not prohibit specified unconstitutional practices *a fortiori* qualifies as "acting under a mistaken interpretation of law"—again conduct on Finley's part that is not immune.  And, training City officers that it is permissible to commit constitutional violations goes beyond Finley's discretionary authority— another ground for denying immunity.

Pl.'s Resp. (Doc. 30) at 87.

Although Defendants dispute Plaintiff's argument that Chief Finley exceeded his discretionary authority, they do not challenge her separate arguments that other exceptions operate to deprive him of immunity, namely, that he acted "contrary to what is required by law" and "under a mistaken interpretation of law."  *See* Defs.' Reply (Doc. 35) at 29-31; *id.* at 31 ("Because the Plaintiff has failed to make any adequate showing at the pleading

stage that Chief Finley acted beyond his discretionary authority in his training of Officer Smith, she has failed to show this Court why any exceptions to *Cranman* apply that would preclude Chief Finley from the immunity that *Cranman* clearly affords him.").  However, Defendants provide no authority for their proposition that Chief Finley cannot be excepted from state-agent immunity based upon his alleged acting contrary to federal and state law or under a mistaken interpretation of law.  That fact, alone, warrants denial of Defendants' motion to dismiss at this time.

In addition to the foregoing, prudential reasons warrant denying the motion at this time.  As the Alabama Supreme Court has repeatedly recognized, a "motion to dismiss is typically not the appropriate vehicle by which to assert . . . State-agent immunity and . . . normally the determination as to the exercise of such a defense should be reserved until the summary judgment stage, following appropriate discovery."  *Ex parte Bitel*, 45 So. 3d 1252, 1255 (Ala. 2010) (internal quotation omitted).  This is so because proving the applicability of state-agent immunity embraces a burden-shifting framework whereby a "State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity."  *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006).  If the State agent makes such a showing, the burden then shifts to the plaintiff to show that one of the exceptions recognized in *Cranman* applies. *Id.*  This is necessarily a fact-intensive inquiry that, in most cases, will require a reviewing court to go beyond the four corners of the complaint to properly resolve.  Hence, Alabama law plainly contemplates that, except in the most obvious circumstances, an immunity

defense like the one Chief Finley raises in the instant matter is properly raised in summary judgment proceedings, after the parties have conducted discovery.

Here, Plaintiff's complaint at least plausibly alleges that Chief Finley, *inter alia*, acted beyond his authority or under a mistaken interpretation of the law in both his adoption and implementation of policies and customs relating to the constitutional parameters of citizen-police encounters, and in his training of Smith. Thus, even if "at first blush" it appeared that *Cranman* might operate to shield Chief Finley from liability, because "[i]t is conceivable that [Plaintiff] could prove facts that would show" her entitlement to relief, the motion to dismiss should be denied. *See Ex parte Butts*, 775 So. 2d 173, 178 (Ala. 2000).

For the foregoing reasons, the undersigned concludes that Defendants' motion to dismiss Count VII of the Complaint should be denied at this time.

## D.    Count VIII of the Complaint.

Count VIII of the Complaint alleges that the City is liable under theories of vicarious liability or respondeat superior for the actions of Smith and Chief Finley which, it is alleged, caused Mr. Gunn's wrongful death. Compl. (Doc. 1) at ¶¶ 262-266. Defendants argue that this claim should be dismissed because the Complaint's allegations pertaining to Smith "rise beyond activity constituting simple 'neglect, carelessness, or unskillfulness[,]'" in that they describe an intentional tort committed by Smith, for which the City may not be held vicariously liable. Defs.' Br. (Doc. 21) at 17-18. Defendants further contend that the City is shielded from liability for the actions of Chief Finley because, they assert, Chief Finley "is immune from suit as a State-agent acting with

discretionary authority within the line and scope of his law enforcement duties pursuant to the Court's restatement of § 6-5-338 in *Cranman*." *Id.* at 19.

With regard to the City's alleged liability through Smith, Plaintiff argues that her wrongful death claim against Smith plainly alleges that Smith's "neglect, carelessness, or unskillfulness" was the proximate cause of Mr. Gunn's death.  Pl.'s Resp. (Doc. 30) at 89. As such, she maintains, she is not alleging that Smith committed an intentional tort for which the City could not be vicariously liable.  *Id.*  Instead, she is alleging a claim of negligence against Smith.  Moreover, Plaintiff points to recent authority from this court rejecting a similar argument made by the instant Defendant in a different case.  *See Davis v. City of Montgomery*, No. 2:16-cv-346-WHA, 2016 WL 3769755, at *4 (M.D. Ala. July 14, 2016) ("Alabama law recognizes claims for negligence in excessive use of force, false arrest, and assault and battery. . . .  Because claims can be pled in the alternative, Fed. R. Civ. P. 8(d)(2), the court cannot conclude that Davis is precluded from proceeding on claims of intentional conduct for purposes of state law claims, as well as his constitutional claims, and also alternatively on claims of negligence under state law[.]").  Defendants do not further challenge this conception of Plaintiff's claim.  *See* Defs.' Reply (Doc. 35) at 31-32.

For the reasons argued by Plaintiff, including this court's decision in *Davis*, the undersigned concludes that the City is not shielded from vicarious liability based merely upon Plaintiff's allegations with respect to Smith.

With respect to the City's alleged liability through Chief Finley's actions, Plaintiff argues that, because Chief Finley is not protected by immunity, neither is the City.  Pl.'s

Resp. (Doc. 30) at 93.  Defendants agree "that, in the context of the Plaintiff's wrongful death claims, the City of Montgomery's immunity is directly tied to that of Chief Finley." Defs.' Reply (Doc. 35) at 31.  Because the undersigned has determined that, at this time, Chief Finley is not immune pursuant to *Cranman*, neither is the City entitled to immunity at this stage of the proceedings.

Accordingly, the undersigned concludes that Defendants' motion to dismiss Count VIII of the Complaint is due to be denied.

## V.    CONCLUSION

For all of the foregoing reasons, the undersigned Magistrate Judge hereby RECOMMENDS that Defendants' Motion to Dismiss (Doc. 20) be GRANTED-IN-PART and DENIED-IN-PART.  In particular, Defendants' motion to dismiss Plaintiff's claims in her individual capacity against Chief Finley and the City of Montgomery should be GRANTED and those claims should be DISMISSED with prejudice due to Plaintiff's lack of standing in her individual capacity.  In all other respects, Defendant's motion should be DENIED.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **March 15, 2017**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 2nd day of March, 2017.


/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE