IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| NELLIE RUTH GUNN, *individually* ) | |
| *and as Administratrix of the Estate of* ) | |
| *Gregory Gunn, Deceased*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:16-CV-557-WKW |
| ) | (WO) |
| CITY OF MONTGOMERY, ) | |
| ALABAMA, *et al*. ) | |
| ) | |
| Defendants. ) | |

## <u>ORDER</u>

On March 2, 2017, the Magistrate Judge filed a Recommendation (Doc. # 41) to which Plaintiff objected. (Doc. # 44.) The court has conducted an independent and *de novo* review of those portions of the Recommendation to which objection is made. *See* 28 U.S.C. § 636(b).

### I.  FACTS[1]

In the very early morning hours of February 25, 2016, Defendant Aaron Cody Smith, a white police officer for the City of Montgomery, Alabama, was on patrol alone in his vehicle when he confronted Gregory Gunn, a 58-year-old African-American, as Mr. Gunn gun was walking home from a card game at a neighbor's

---

[1] The facts set forth in this Opinion are as alleged in the complaint. (Doc. # 1 at ¶¶ 12-82.)

house. Without any basis for reasonable suspicion that Mr. Gunn was involved in criminal activity, Smith approached Mr. Gunn and initiated a "stop and frisk." Mr. Gunn was not armed and Smith had no reason to believe he was armed.

Before Smith completed the pat-down, Mr. Gunn fled in the direction of his home. Smith, still lacking any reasonable suspicion that Mr. Gunn was involved in criminal activity, pursued Mr. Gunn on foot. During the pursuit, Smith deployed a Taser on Mr. Gunn at least three times, even though Mr. Gunn had not threatened Smith and Smith had no reason to fear for his own safety. Because the Taser failed to stop Mr. Gunn's flight, Smith struck Mr. Gunn several times with an expandable metal baton. During the entire confrontation, Mr. Gunn made no oral threats, never made any aggressive moves, and never tried to reach for any of Smith's weapons. Nevertheless, by the time Mr. Gunn reached his next-door neighbor's house, Smith brandished his service firearm and fired seven shots at Mr. Gunn, striking him five times and killing him. Mr. Gunn died shortly thereafter in his next-door neighbor's front yard. When he died, he was only steps away from the home he shared with his mother, Plaintiff Nellie Ruth Gunn.

## II.   PROCEDURAL HISTORY

On July 8, 2016, Plaintiff filed this suit in her individual capacity and in her capacity as administratrix of the estate of Gregory Gunn. She asserts claims under 42 U.S.C. § 1983 and state law claims. With respect to the §1983 claims, Plaintiff

seeks to recover personally for loss of companionship and support (Doc. # 1 at ¶¶ 131, 173, 189, 206, 227) and in her representative capacity for the death of her son.[2]

On August 11, 2016, Defendants filed a motion to dismiss all Plaintiff's individual and representative capacity claims. On March 2, 2017, the Magistrate Judge entered a Recommendation that the motion to dismiss be granted as to Plaintiff's individual capacity § 1983 claims and denied as to the remainder of her claims. The Magistrate Judge held that Plaintiff did not have standing to assert individual capacity claims under § 1983 for any injuries she suffered due to the alleged violation of Mr. Gunn's constitutional rights. (Doc. # 41 at 8.)

On March 15, 2017, Plaintiff Nellie Ruth Gunn filed objections to the Magistrate Judge's Recommendation that her individual capacity §1983 claims should be dismissed. (Doc. # 44.)

### III. DISCUSSION

Citing *Carringer v. Rodgers*, 331 F.3d 844, 849 (11th Cir. 2003) and *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961),[3] Plaintiff argues that § 1983 is deficient

---

[2] "[W]hen a constitutional violation actually causes the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful death statute, Ala. Code [1975] § 6-5-410." *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1047 (11th Cir. 2011). Alabama's wrongful death statute confers the ability to bring a wrongful death action solely on the representative of the decedent's estate. Ala. Code 1975 § 6-5-410(a).

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

for not providing for individual capacity claims in the event of a loved one's death by unconstitutional means, but the court should not look to state law to remedy the deficiency because Alabama law's failure to recognize such claims in the wrongful death context fails to fully effectuate the purposes of §1983.[4] In *Carringer* and *Brazier*, the Court of Appeals held that that § 1983 is deficient in not providing for survivorship of a §1983 claim for unconstitutional conduct that resulted in death and looked to state survivorship and wrongful death statutes to determine that a civil rights wrongful death claim survives. In concluding that Plaintiff lacked standing to assert individual capacity § 1983 claims for injuries personal to her resulting from the death of her adult son, the Magistrate Judge found that *Carringer* and *Brazier*

---

[4] 42 U.S.C. § 1988(a) provides:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

Pursuant to § 1988, courts look to state law where federal civil rights statutes are deficient but only "to the extent that [state law] is currently available to overcome these deficiencies," *Brazier*, 293 F.2d 408, and only if the state law "is not inconsistent with the Constitution and laws of the United States." *Wilson v. Garcia*, 471 U.S. 261, 267 (1985), *superseded by statute in part on other grounds*, 28 U.S.C. § 1658.

are distinguishable because the present case is an Alabama case, and, in the cited cases, the Court of Appeals looked to and incorporated Georgia state law.[5]

*Carringer* and *Brazier* are distinguishable, but not necessarily because the Court of Appeals looked to Georgia law instead of Alabama law.  They are distinguishable because they relate to the survivorship of a decedent's § 1983 action, whereas this case involves a different question: whether § 1983 is a remedy for injuries personal to a parent when an adult child is killed as a result of unconstitutional actions by state officers.  In *Robertson v. Hecksel*, 420 F.3d 1254 (11th Cir. 2005), a case very similar to this one,[6] the Eleventh Circuit noted the importance of the distinction:

> [The decedent's mother] argues her claim is controlled by *Brazier v. Cherry*, 293 F.2d 401 (5th Cir.1961), and *Carringer v. Rodgers*, 331 F.3d 844 (11th Cir.2003).  Because those cases involve the application of 42 U.S.C. § 1988, it will be helpful for us to first briefly discuss how § 1988 works before explaining why *Brazier* and *Carringer* are not relevant to [the decedent's mother]'s claim.
>
> . . . .
>
> *Brazier* and *Carringer* were both instances where state law was used to fill gaps in federal law through § 1988's borrowing provision. [The

---

[5] It is undisputed that, under Alabama law, Plaintiff's wrongful death § 1983 claim survives.

[6] In *Robertson*, the plaintiff's son, Corey Rice, was killed when an officer shot at him as he fled from a traffic stop after the officer brandished his gun and pointed it at him without cause. *Robertson*, 420 F.3d at 1255–56.  Corey Rice's mother, Patricia Robertson, brought §1983 claims in her individual capacity for "deprivation of a Fourteenth Amendment right to a relationship with her adult son and sought damages for loss of support, loss of companionship, and past and future mental pain and suffering." *Id*. at 1256.

5

decedent's mother] would have us also look to [Florida[7]] law through § 1988's borrowing provision to decide her case. Her argument misses the dispositive difference between *Brazier* and *Carringer* and our case. In those cases, the plaintiffs were seeking vindication of the *decedent's* rights under § 1983. Here, [the decedent's mother] alleges a violation of *her* rights. *Regardless of whose rights are being asserted, before § 1983 and § 1988 can come into play, the plaintiff must still establish the existence of a federal right. Because [the decedent's mother] has failed to establish a federal right, we never reach § 1983, let alone § 1988 and state law.*

The plaintiffs in *Brazier* and *Carringer* passed the first hurdle of bringing a § 1983 suit—identifying a federal right—by relying on the rights of the decedent. *Cf.* Steven H. Steinglass, *Wrongful Death Actions and Section 1983*, 60 Ind. L.J. 559, 621 (1985) ("Wrongful death statutes permit survivors to sue when a killing violated their decedent's rights.... [B]oth survival and wrongful death actions assert the identical legal rights of the decedent."). In essence, they were bringing wrongful death suits under federal law. Although the survivors' claims were separate from the claims of the decedents' estates, the *Brazier* and *Carringer* plaintiffs' claims necessarily required a finding that the decedents' deaths were wrongful in some way. Conversely, whether the decedent's rights in our case were violated has no bearing on the ability of his mother to argue a loss of companionship, because her alleged cause of action is based on a violation of rights personal to her, not rights personal to the decedent. For that reason, *Brazier* and *Carringer* are not controlling.

. . . .

[The decedent's mother]'s belief that *Brazier* and *Carringer* were controlling may have been caused in part by dicta in *Carringer*. Footnote nine of *Carringer* begins by noting that the "right to wrongful death recovery under § 1983 has generated considerable debate amongst our sister circuits" and then compares the *Brazier* analysis with the analysis of the circuits that "allow a claimant to argue that he had a relationship with the deceased that was constitutionally protected and that the

---

[[7] Unlike Alabama law, Florida law would have allowed the decedent's mother to pursue claims for injuries personal to her as a result of the death of her child.]

6

> homicide of the decedent destroyed that relationship and, therefore, violated the claimant's own protected constitutional rights." *Carringer*, 331 F.3d at 850 n. 9 (citations omitted). This comparison insinuates that the two approaches are in response to the same question, but, for reasons already discussed, they are not.

*Robertson*, 420 F.3d at 1260–62 & 1262 n.9 (third emphasis added).

In this case, there is no need to reach Plaintiff's § 1988 argument that the court should disregard Alabama law regarding a survivor's individual right of recovery on grounds that Alabama law fails to effectuate the purpose of § 1983. As the Eleventh Circuit noted in *Robertson*, "before § 1983 and § 1988 can come into play, the plaintiff must [first] establish the existence of a federal right." 420 F.3d at 1261. Further, in *Robertson*, the Eleventh Circuit held that, because "a parent does not have a constitutional right of companionship with an adult child," § 1988 does not provide a vehicle for a parent of a deceased adult child to bring a § 1983 action to recover for injuries personal to the parent. *Id*. at 1262. Accordingly, § 1988 does not come into play, and the court need not consider whether Alabama survivorship law is consistent with § 1983 with regard to whether loved ones may sue for loss of companionship and support in cases of wrongful death.

Despite the stark similarities between the facts and legal issues in this case and *Robertson*, Plaintiff has not cited *Robertson*. Perhaps this is because *Robertson* addressed whether Fourteenth Amendment due process protections extend to the relationship between a mother and her adult son, whereas here Plaintiff attempts to

7

couch her individual capacity claims in terms of injuries she suffered incident to the violation of her son's constitutional rights in the form of unlawful searches and seizures, excessive force, and equal protection constitutional violations. Plaintiff's artful pleading is unavailing.

As the Magistrate Judge noted, Plaintiff does not have standing to recover for injuries incidental the deprivation of another's constitutional rights. *Cf. Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1040 (11th Cir. 2008) (noting that nonminorities have standing to file suit under § 1983 when they are subjected to discrimination for associating with minorities because, rather than seeking to vindicate the rights of third parties, the nonminority plaintiffs are seeking to vindicate their own injuries that arise from the nonminority plaintiffs' own rights to be free from official discrimination and unequal enforcement of the laws). Further, in her objections, Plaintiff fails to point to any controlling case law that demonstrates she has standing, capacity, or a legal remedy in § 1983 to recover for her own injuries incident to the deprivation of another person's constitutional rights. Alternatively, as a matter of prudential standing, Plaintiff has not demonstrated that she personally should be allowed to assert a claim to vindicate the rights of a third party (her son), regardless of whether she personally was injured by the violation. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("[A] party generally must assert his own legal rights and interest, and cannot rest his claim to relief on the legal rights or interests

of third parties." (quotation and citation omitted)); *Young Apartments*, 529 F.3d at 1041 ("In an ordinary case, a plaintiff is denied standing to assert the rights of third parties.").

As a practical matter, Plaintiff's individual §1983 claims do not serve to vindicate her son's constitutional rights affected by the unlawful searches and seizures, excessive force, and equal protection violations directed at her son. Plaintiff's representative capacity claims adequately serve that purpose. With respect to Plaintiff's individual capacity § 1983 claims, according to the plain language of the complaint, the right Plaintiff is seeking to vindicate, and the violation of which proximately caused her injury, is her own right to maintain her familial relationship with her son. Specifically, Plaintiff alleges that, as a result of the unconstitutional killing of her son, she suffered "severe emotional distress and mental anguish and other pain and suffering; lost regular financial support that the decedent, Gregory Gunn, had provided her; and lost the society and companionship of her son, with whom she had resumed a close family unit for multiple years before his murder." (Doc. # 1 at ¶¶ 131, 173, 189, 206, 227.) No doubt Mrs. Gunn pleads the truth. But, despite the fact that Plaintiff artfully does not set forth her individual capacity § 1983 claim in a separate count of the complaint alleging a Fourteenth Amendment due process claim, in reality, Plaintiff's individual capacity claim is a

Fourteenth Amendment due process claim for interruption of her own familial association rights. Therefore, *Robertson* bars her claims.

Accordingly, and for the reasons stated in the Recommendation (Doc. # 41), the Magistrate Judge was correct in finding that Plaintiff cannot recover under § 1983 for injuries personal to her as a result of the death of her adult child.[8] *See Robertson*, 420 F.3d at 1262 ("The loss of a child at any age, under any circumstances, is one of the most difficult experiences a parent can endure. While the parent/adult child relationship is an important one, the Constitution does not protect against all encroachments by the state onto the interests of individuals. Instead, it is the province of the [state] legislature to decide when a parent can recover for the loss of an adult child. We will not circumvent its authority through an unsupported reading of the Fourteenth Amendment.").

## V.   CONCLUSION

Accordingly, it is ORDERED as follows:

1.   Plaintiff Nellie Ruth Gunn's objection (Doc. # 44) is OVERRULED.

2.   The Recommendation of the Magistrate Judge (Doc. # 41) is ADOPTED.

---

[8] Plaintiff objects that the issue is not a question of standing, but of whether Plaintiff has a cause of action under § 1983. However, whether the problem is characterized as a lack of standing or as the nonexistence of a cause of action, the practical outcome is the same: dismissal of Plaintiff's §1983 claims for injuries personal to her.

3. Defendants' Motion to Dismiss (Doc. # 20) is GRANTED IN PART as to Plaintiff Nellie Ruth Gunn's individual capacity § 1983 claims. In all other respects, the Motion to Dismiss (Doc. # 20) is DENIED.

4. Plaintiff Nellie Ruth Gunn's § 1983 claims for damages personal to her are DISMISSED.

5. This case is REFERRED back to the Magistrate Judge for further proceedings on Plaintiff Nellie Ruth Gunn's remaining claims (*i.e.*, her representative capacity § 1983 claims and her state law claims).

DONE this 24th day of March, 2017.

                    /s/ W. Keith Watkins
        CHIEF UNITED STATES DISTRICT JUDGE