**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

NELLIE RUTH GUNN, individually )
and as Administratrix of the Estate of )
GREGORY GUNN, deceased, )
                                )
      Plaintiff, )
                                  )
v. )      CASE NO.:  2:16-cv-557-WKW-WC
                                  )
CITY OF MONTGOMERY, )
ALABAMA, *et al.*, )
                                  )
      Defendants. )

# RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is the Motion to Dismiss (Doc. 20) filed by Defendant Aaron Cody Smith.  Plaintiff has filed a response (Doc. 53) in opposition to the motion, and Defendant has filed a reply (Doc. 54).  On August 10, 2016, the District Judge entered an Order (Doc. 19) referring this case to the undersigned Magistrate Judge "for consideration and disposition or recommendation on all pretrial matters as may be appropriate."  The motion is fully briefed and is ripe for recommendation to the District Judge.  For the reasons that follow, the undersigned Magistrate Judge RECOMMENDS that Defendant's motion be granted-in-part and denied-in-part.

## I.    BACKGROUND

Plaintiff, suing in her individual capacity and in her capacity as the Administratrix of the Estate of Gregory Gunn, filed suit on July 8, 2016.  *See* Compl. (Doc. 1).  Plaintiff's complaint concerns the shooting death of her adult son, Gregory Gunn, by Defendant Smith, a City of Montgomery police officer.  The Complaint alleges, in exacting detail, the

events and circumstances leading up to Defendant's shooting of Mr. Gunn.  *See* Compl.

(Doc. 1) at ¶¶ 12-82.  The undersigned previously summarized these allegations as follows:

> Plaintiff alleges that Smith, on patrol alone in his vehicle in the very early morning hours of February 25, 2016, confronted Mr. Gunn during Mr. Gunn's walk home from a friend's house.  Smith approached Mr. Gunn and initiated a "stop and frisk" of Mr. Gunn without any reasonable suspicion that Mr. Gunn was involved in criminal activity.  Mr. Gunn was not armed and Smith had no reason to believe he was armed.  During Smith's pat down of Mr. Gunn, Mr. Gunn fled in the direction of his home.  Smith, still lacking any reasonable suspicion that Mr. Gunn was involved in criminal activity, pursued Mr. Gunn on foot.  During his pursuit, Smith deployed a taser on Mr. Gunn at least three times even though Mr. Gunn had not threatened Smith and Smith had no reason to fear for his own safety.  Because Smith's tasing of Mr. Gunn did not cause Mr. Gunn to stop fleeing, Smith next struck Mr. Gunn several times with an expandable metal baton.  By the time Mr. Gunn reached his next-door neighbor's house, Smith brandished his service firearm and fired seven shots at Mr. Gunn, striking him five times, and killing him.  Mr. Gunn died in his next-door neighbor's front yard.

Doc. 41 at 2.

Plaintiff alleges several federal constitutional and state law causes of action against Defendant Smith.  Summarizing Plaintiff's claims, the Complaint alleges as follows: a) that Defendant "stopped and frisked" Mr. Gunn without any arguable reasonable suspicion that Mr. Gunn was involved in criminal activity and initiated his use of force against Mr. Gunn with no legal basis to do so, and that he escalated his use of force through the use of deadly force, all in violation of Mr. Gunn's Fourth Amendment rights ("Count I"); b) that, even if Defendant had arguable probable cause to arrest Mr. Gunn, his multiple uses of force against Mr. Gunn were not legally justified and were excessive, in violation of Mr. Gunn's Fourth Amendment rights ("Count II"); c) that Defendant's stop-and-frisk of Mr. Gunn, as well as his uses of force against Mr. Gunn, were the product of racial profiling

and were racially motivated, in violation of Mr. Gunn's Fourteenth Amendment right to be free from intentional discrimination on the basis of his race ("Count III"); and d) with respect to Alabama law, Defendant wrongfully caused Mr. Gunn's death when he unlawfully stopped him and proceeded to employ the various levels of force, including lethal force, described in the Complaint ("Count VI").

## II.    DEFENDANT'S MOTION

Defendant moves to dismiss "Counts III and VI of Plaintiff's Complaint, any survivorship claims alleging conscious pain, emotional distress, mental anguish, or loss of consortium contained in Counts I and II, and any claims by Nellie Ruth Gunn for damages in her individual capacity." Doc. 42 at 1.  In short, Defendant argues that "Plaintiff has no standing to pursue any claims in this case solely in her individual capacity[,]" that any "survivorship claims in the Complaint are similarly barred by Ala. Code § 6-5-462[,]" that he is protected by statutory immunity with respect to Plaintiff's wrongful death claim under Alabama law, and that Plaintiff has failed to state any claim upon which relief could be granted for any claim of racial profiling or racially-motivated violence alleged in the Complaint.  Doc. 42 at 2.

## III.    PLAINTIFF'S INDIVIDUAL CAPACITY CLAIMS

The undersigned first addresses Defendant's argument that Plaintiff lacks standing to sue him in her individual capacity.  Plaintiff explicitly "brings claims in her individual capacity for damages she sustained resulting from the death of her son, Gregory Z. Gunn[.]" Compl. (Doc. 1) at ¶ 6.  In support, Plaintiff alleges as follows:

> As a direct and proximate result of Defendant Smith's violations of Mr. Gunn's Fourth Amendment rights, Plaintiff Nellie Ruth Gunn individually has suffered severe emotional distress and mental anguish and other pain and suffering; lost regular financial support that the decedent, Gregory Gunn, had provided her; and lost the society and companionship of her son, with whom she had resumed a close family unit for multiple years before his murder, all of which suffering, injuries, and damages will in reasonable probability continue into the future and for the remainder of Plaintiff Gunn's life.

Compl. (Doc. 1) at ¶ 131; *see also id.* at ¶¶ 173, 189. Plaintiff limits her individual capacity claims to her claims asserted under 42 U.S.C. § 1983. *Id.*

The undersigned previously addressed the viability of Plaintiff's individual capacity § 1983 claims against co-Defendants Chief Ernest Finley and the City of Montgomery, concluding that she lacks standing to assert any individual capacity claims under § 1983 for her own injuries flowing from the violation of Mr. Gunn's Fourth Amendment rights, and recommending that such individual capacity claims be dismissed with prejudice. *See* Doc. 41 at 4-8. Plaintiff filed lengthy objections to the undersigned's Recommendation. *See* Doc. 44. Upon review, the District Judge determined that, despite Plaintiff's "artful pleading," Plaintiff's individual capacity claims are essentially "Fourteenth Amendment due process claim[s] for interruption of her own familial association rights" with her adult son and, consequently, because "'a parent does not have a constitutional right of companionship with an adult child,'" she "cannot recover under § 1983 for injuries personal to her as a result of the death of her adult child." Doc. 47 at 7-10 (quoting *Robertson v. Hecksel*, 420 F.3d 1254, 1262 (11th Cir. 2005)).

For present purposes, the District Judge's previous ruling is dispositive of Defendant Smith's motion to dismiss Plaintiff's individual capacity claims against him,

and the undersigned hereby adopts and incorporates the District Judge's previous findings and conclusions respecting Plaintiff's individual capacity claims in this Recommendation. Plaintiff acknowledges the District Judge's ruling, but argues, in a lengthy footnote spanning more than five pages of single-spaced text, that the District Judge erred because he viewed Plaintiff's claim as one alleging a violation of her own constitutional rights rather than one alleging injury flowing from the violation of her son's constitutional rights. Doc. 53 at 26 n.12.  To the extent that Plaintiff ultimately seeks reconsideration of the District Judge's ruling on this issue, she may present her argument to the District Judge in timely objections to the instant Recommendation.

For the reasons previously stated by the District Judge, *see* Doc. 47 at 3-10, Plaintiff may not recover in her individual capacity as the complaint alleges.  Accordingly, Defendant Smith's motion to dismiss Plaintiff's individual capacity claims against him is due to be granted.

## IV.    PLAINTIFF'S REPRESENTATIVE CAPACITY CLAIMS

As set forth above, Plaintiff has filed claims in her representative capacity under both § 1983 and Alabama's wrongful death statute.  Defendant moves to dismiss all or parts of these claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the following theories: 1) that Alabama law precludes any "survivorship" claims brought pursuant to 42 U.S.C. § 1983; 2) that Defendant is immune from liability under Plaintiff's state-law wrongful death claim; and 3) that Plaintiff has failed to adequately state any claim of racial profiling or racially-motivated use of force for which relief could be granted.  Doc.

42 at 6-11.   Following a brief discussion of the standard of review applicable to a motion under Rule 12(b)(6), the undersigned will examine each of Defendant's arguments in turn.

When ruling on a motion pursuant to Rule 12(b)(6), "the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff."  *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).   In order to state a claim upon which relief could be granted, a complaint must satisfy the pleading standard of Rule 8 of the Federal Rules of Civil Procedure.

Rule 8 requires that a plaintiff submit a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   In general, then, a pleading is insufficient if it offers only mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]"  *Twombly*, 550 U.S. at 555.  *See also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").   Thus, in order to survive Defendant's motion to dismiss, Plaintiff's complaint "'must contain sufficient factual matter, accepted as true, to 'state a claim for relief which is plausible on its face.'"  *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).   "A claim is factually plausible where the facts alleged permit the court to reasonably infer that the defendant's

alleged misconduct was unlawful.  Factual allegations that are 'merely consistent with' a defendant's liability, however, are not facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that supports the claims alleged in the complaint, then the claim is "plausible" and the motion to dismiss should be denied and discovery in support of the claims should commence. *Twombly*, 550 U.S. at 556.  But, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.  Ultimately, in assessing the plausibility of a plaintiff's claims, the court is to avoid conflating the sufficiency analysis with a premature assessment of a plaintiff's likelihood of success because a well-pleaded claim shall proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### A.    Whether Alabama law precludes Plaintiff's claims.

Defendant argues that "any survivorship claims[—i.e., Plaintiff's claims seeking recovery for Gregory Gunn's pre-death physical pain and suffering, emotional suffering, mental anguish, embarrassment, shame, despair, and hopelessness—]asserted in Counts I, II, and III of Plaintiff's Complaint must be dismissed" because Alabama law does not allow for unfiled claims of that nature to survive the death of the victim.  Doc. 42 at 6-7.  Although

Defendant is sued in both his individual and official capacities, he does not clarify whether his motion to dismiss applies to claims against him in one or both of such capacities. Plaintiff argues that, properly framed, the issue is not whether Alabama's statute on survivorship bars her claims for damages for Gregory Gunn's pre-death physical pain and suffering, emotional suffering, mental anguish, etc., but, rather, what damages she is entitled to seek for the alleged injuries to Mr. Gunn's constitutional rights:

> Rather than a separate claim to which survivorship rules are applied, these damages are a part of a wrongful death action that indisputably survives. And such compensatory damages are recoverable, in addition to punitive damages, as a matter of federal law as a part of that action, notwithstanding any limitations under Alabama law.

Doc. 53 at 31.  Defendant appears to concede Plaintiff's construction of the issue—that Counts I, II, and III present discrete claims seeking recovery of different types of damages—but maintains that, however the issue is framed, because Counts I, II, and III are brought pursuant to Alabama's wrongful death statute, the compensatory damages Plaintiff seeks are not available under Alabama law because "only punitive damages are recoverable in an action for wrongful death."  Doc. 54 at 7.

Count I of the Complaint is Plaintiff's claim that Defendant violated Mr. Gunn's Fourth Amendment rights by subjecting him to an illegal stop and frisk and use of force that resulted in his death.  Plaintiff alleges that Defendant had no reasonable suspicion to stop Mr. Gunn and had no justification to use any degree of force on him during their encounter.  In particular, Plaintiff alleges as follows:

> Defendant Smith's action and omissions, individually and collectively, including his initial illegal detention and frisk of Mr. Gunn without reasonable suspicion, his unjustified use of less-lethal force in tasing and then

repeatedly striking Mr. Gunn, and finally his unjustified use of deadly force
in shooting Mr. Gunn multiple times, proximately caused Mr. Gunn's death.

Doc. 1 at ¶ 119.  Count II is Plaintiff's claim that, even assuming Defendant had probable

cause to arrest Mr. Gunn, his uses of less-lethal and deadly force against Mr. Gunn violated

Mr. Gunn's Fourth Amendment rights because they were "legally unjustified, excessive,

and objectively unreasonable." *Id.* at ¶ 136.  As with Count I, Plaintiff again alleges that

Defendant's "individual and collective" "acts and omissions" proximately caused Mr.

Gunn's death.  *Id.* at ¶ 167.  Finally, Count III of the Complaint is Plaintiff's claim that

Defendant's actions, inasmuch as it is alleged they were based upon Mr. Gunn's race,

"violated Mr. Gunn's right to be free of racial discrimination under the Equal Protection

Clause of the Fourteenth Amendment to the United States Constitution." *Id.* at ¶ 186.

In each of Counts I, II, and III, Plaintiff seeks to recover, *inter alia*, compensatory

damages for Mr. Gunn's suffering of pre-death injuries, including "excruciating physical

pain and suffering[;]" "severe emotional suffering and mental anguish, embarrassment,

shame, despair, and hopelessness[;]" "lost earnings and/or loss of earning capacity in the

future based on the probable duration of his life if the injury had not occurred;" "loss of

consortium before his death and into the future;" "loss of the enjoyment of the remainder

of the probable duration of his life if the injury had not occurred;" and "funeral and burial

expenses[.]" *Id.* at ¶ 132.  *See also id.* at ¶ 174, 190.  As detailed above, it is Plaintiff's

ability to recover damages for these alleged injuries that is the subject of this portion of

Defendant's motion to dismiss.

Counts I, II, and III are brought pursuant to 42 U.S.C. § 1983, which "provides a cause of action for injuries caused by official actions taken under color of state law in deprivation of a person's constitutional rights." *Sharbaugh v. Beaudry*, __ F.Supp. 3d __, 2017 WL 3013265, at *2 (N.D. Fla. July 14, 2017). Section 1983, as with other civil rights laws, is enforced via 42 U.S.C. § 1988, which provides that, where federal law is "deficient in the provisions necessary to furnish suitable remedies and punish offenses against the law," then federal courts are to look to the law of the forum state to assess the measure of damages available under § 1983. *See, e.g., Gilmere v. City of Atlanta, Ga.*, 864 F.2d 734, 738 (11th Cir. 1989) ("Federal courts are to turn to state law in order to fill gaps which may exist in federal law. . . .  Where federal law is sufficient to carry the policies of the civil rights statutes into effect, resort to state law is not necessary."). However, "if state law is required to fill a gap in federal law, courts also must consider whether applying the state law would be 'inconsistent with the Constitution and laws of the United States,' and if so, the state law is not to be applied, because the federal interest predominates." *Sharbaugh*, 2017 WL 3013265, at *2 (quoting *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1045 (11th Cir. 2011)). It follows that, where federal law is deficient, but application of state law would be inconsistent with the Constitution and federal laws, the federal court is to craft a remedy that vindicates the federal interest and is consistent with the Constitution and federal law.

"The focus of any award of damages under § 1983 is to compensate for the actual injuries caused by the particular constitutional deprivation." *Gilmere*, 864 F.2d at 739 (citing *Memphis Cty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986)). Section 1983, however,

does not provide a measure of damages.  Hence, as required by § 1988, "state tort law provides the appropriate starting point for the inquiry into the proper measure of damages under § 1983." *Id.* at 738.  The question of what damages are available to a § 1983 plaintiff in Alabama alleging that a constitutional deprivation resulted in the decedent's death has not received a thorough treatment nor a definitive answer in the Eleventh Circuit Court of Appeals.  To be sure, the Circuit Court has remarked, in *dicta*, that, "when a constitutional violation actually causes the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful death statute, Ala. Code § 6-5-410[.]" *Gilliam*, 639 F.3d at 1047.  Nevertheless, even with the availability of a remedy that can be pursued through the Alabama wrongful death statute, "the kinds of damages that are recoverable are determined by federal law." *Id.* at 1047 n.9.

Ultimately, because state wrongful death statutes vary in the types of damages that are recoverable, federal courts adjudicating § 1983 claims are afforded flexibility under § 1988 in determining the kinds of damages available to the plaintiff in order to satisfy the objectives of § 1983. *See, e.g., Gilmere*, 864 F.2d at 738 (finding that federal law does not "*require* federal courts to apply a state law measure of damages as a remedy for a deprivation of constitutional rights") (emphasis in original).  This distinction is important because, as Defendant asserts, the Alabama wrongful death statute permits only the recovery of punitive damages against a defendant. *See, e.g., Entrekin v. Internal Med. Assocs. of Dothan, P.A.*, 689 F.3d 1248, 1253 (11th Cir. 2012) (citing *Black Belt Wood Co. v. Sessions*, 514 So. 2d 1249, 1262 (Ala. 1986)). *See also Lewis v. City of Montgomery*, Civ. No. 2:04-cv-858-WKW, 2006 WL 1761673, at *4 (M.D. Ala. June 27, 2006)

11

("Alabama's wrongful death statute provides for recovery only of punitive damages; no compensatory damages are available.").  Indeed, the Alabama wrongful death statute's limitation of recovery to only punitive damages previously caused the Eleventh Circuit to muse, again in *dicta*, that, given the compensatory objective of § 1983, "reliance on the Alabama wrongful death statute would not be proper under § 1988."  *Gilmere*, 864 F.2d at 740 n.7.  The question, therefore, is whether Alabama's wrongful death statute, when applied in a case where the alleged constitutional tort results in death, is consistent with the Constitution and laws of the United States such that this court may utilize them to determine the damages Plaintiff may seek and recover.

Defendant cites to no binding authority holding that a plaintiff prosecuting a § 1983 action via Alabama's wrongful death statute is not entitled to recover compensatory damages for the plaintiff's decedent's pre-death injuries where the alleged constitutional torts caused the decedent's death.[1]  Although the Eleventh Circuit has not directly decided

---

[1]  The only binding authority cited by Defendant in his motion to dismiss, *Gilliam*, concerns whether certain tort claims may survive under Alabama law, not the types of damages available to a § 1983 plaintiff proceeding under Alabama's wrongful death law.  However, even to the extent *Gilliam* is proffered as relevant to the instant motion to dismiss, the Eleventh Circuit was confronted in that case with a factually inapposite question:

> The issue in this case is whether a § 1983 excessive force claim survives in Alabama if the injured party dies before the lawsuit is filed, or abates pursuant to Ala. Code § 6-5-462.  *We stress at the outset that this case, in its present procedural posture, does not involve a claim that the officers' unconstitutional conduct caused the decedent's death*. . . .  Therefore, the only issue we address is whether a § 1983 excessive force claim that did not result in the decedent's death survives in Alabama or abates under Ala. Code § 6-5-462.

639 F.3d at 1044-45 (emphasis supplied).  The *Gilliam* court proceeded to conclude that the decedent's death caused his unfiled excessive force claims to abate pursuant to Alabama's survivorship law.  *Id.* at 1049-50.  While Defendant is therefore correct in arguing, broadly, that

the question, *dicta* in *Gilliam* portends that panel's answer: "So, when a constitutional violation causes the injured party's death, Alabama law provides compensation for the constitutional violation and imposes liability on the state official responsible for the death—a result consistent with the purposes of § 1983." *Id.* at 1047-48. Of course, this notion appears to conflict with the Eleventh Circuit's prior observation, also in *dicta*, that, because Alabama's wrongful death statute permits the recovery of only punitive damages, it is "inconsistent with the rule that damages in § 1983 actions are to be compensatory" and, therefore, "reliance on the Alabama wrongful death statute [to assess damages] would not be proper under § 1988." *Gilmere*, 864 F.2d at 740 n.7. With Circuit case law on the issue before the court therefore somewhat muddled and lacking any authoritative answer, the court should look to how the lower courts have addressed this issue.

To that end, Defendant relies heavily upon the district court's decision in *Brown v. Morgan County, Alabama*, 518 F.Supp. 661 (N.D. Ala. 1981). *See* Doc. 54 at 8-10. In that case, the court succinctly articulated the issue, and the parties' overarching positions:

> The court notes at the outset that there is not a case that has dealt with the precise question presented in this case: whether both punitive damages and compensatory damages are recoverable in a 1983 case where the injured party has died from the alleged wrongful acts and the action is being maintained only by reference to the Alabama wrongful death act. It is clear that under Alabama law only punitive damages are recoverable. Ala.Code s 6-5-410 (1975). Plaintiff contends that federal law, rather than Alabama law

---

the "Eleventh Circuit has held that Alabama's survivorship statute . . . applies to § 1983 actions," Doc. 42 at 6, his subsequent citation of *Gilliam* for the proposition that "because Plaintiff is alleging the constitutional violations actually caused Gregory Gunn's death, the survivorship claims asserted by Plaintiff under § 1983 . . . are not viable since Mr. Gunn died before the lawsuit was filed, and instead abate[,]" *see id.* (emphasis in original), is not, in fact, supported by *Gilliam*. As set forth above, *Gilliam* carefully explained that it was not deciding that question.

should be applied because the Alabama law is inconsistent with the purposes of 42 U.S.C. s 1983. Plaintiff would, thus, have the court use as much of the Alabama law as would allow the cause of action to be maintained, but would have the court reject that portion of the action which restricts the damages awarded to punitive damages. Defendants contend that since the cause of action would not even survive the deceased's death without reliance on the Alabama wrongful death act, plaintiff must also operate under the limitations contained in that act, in other words, "take it like you find it." The question has been addressed by neither the Fifth Circuit nor by the Supreme Court.

518 F. Supp. at 662.  The *Brown* court determined that Alabama law limiting recovery for wrongful death to punitive damages was not in conflict with the compensatory objective of § 1983, and therefore should not be rejected, because "here the injured party is deceased, any damage award would not compensate him for his injuries, because the cruel fact is that he is no longer present to benefit from any damages awarded. No damage award could compensate him." *Id.* at 664.  In other words, in the *Brown* court's view, the plaintiff in a § 1983 action utilizing the Alabama wrongful death act, i.e., the decedent's estate, "is in no way disadvantaged by being limited to a recovery of punitive damages." *Id.*

Other district courts have departed from *Brown*'s reasoning.  For example, in *Weeks v. Benton*, 649 F. Supp. 1297, 1307-09 (N.D. Ala. 1986), the court distinguished *Brown* and held as follows:

in actions under § 1983, where the liability of a municipality, county, or other local governmental entity is at issue, and where the alleged unconstitutional acts result in the death of the victim, the Alabama wrongful death act should be applied only to the extent that the decedent's action is permitted to survive. The wrongful death statute should not be held to foreclose the recovery of compensatory damages against the governmental entity in question, for such a result would be inconsistent with the policies underlying § 1983.

Accordingly, the district court ruled that the plaintiff, although proceeding under the Alabama wrongful death act, would be permitted to recover compensatory damages from

14

governmental actors "in their official capacity if their liability under § 1983 can be established." *Id.* at 1309.[2]  In *Lewis v. City of Montgomery, et al.*, No. 2:04-cv-858-WKW, 2006 WL 1761673, at *4 (M.D. Ala. June 27, 2006), this court, following the reasoning of *Gilmere*—i.e, "that § 1983 actions are for the purpose of providing compensatory damages"—allowed a § 1983 plaintiff alleging that the defendants' unconstitutional actions resulted in the decedent's death to assert claims for compensatory damages against both a municipality and several defendants in their individual capacities.  *See also Robinson v. City of Hueytown*, No. 2:14-cv-1886-MHH, 2015 WL 5719144, at *4-5 (N.D. Ala. Sept. 30, 2015) (discussing *Gilmere* and *Weeks* and agreeing with the *Lewis* court's judicially proscribed remedy allowing compensatory damages in § 1983 action under the Alabama wrongful death statute).

Ultimately, the undersigned finds the reasoning employed by this court in *Lewis* persuasive.  It is axiomatic that one of the primary objectives of damages under § 1983 is to compensate the victim of an unconstitutional tort.  *Stachura*, 477 U.S. at 307; *see also Carey v. Piphus*, 435 U.S. 247, 257 (1978) (observing, "damages awards under § 1983 should be governed by the principle of compensation").  "'Compensatory damages' are defined as those damages that 'will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong

---

[2]   The court in *Weeks* did not purport to "overrul[e] the application of the Alabama Statute's restriction on the recovery of compensatory damages with respect to individual defendants in § 1983 actions."  649 F. Supp. at 1309 n.12.  Moreover, the court further noted that "there is no evidence that the recovery of punitive damages against individual defendants under the Alabama statute would be inadequate to satisfy the deterrent and compensatory policies underlying § 1983."  *Id.*

or injury.'"  *McMillian v. F.D.I.C.*, 81 F.3d 1041, 1055 (11th Cir. 1996) (quoting Black's Law Dictionary (6th Ed. 1991)).  On the other hand, "[p]unitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme misconduct."  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-67 (1981) (citing Restatement (Second) of Torts § 908 (1979)).  Thus, the aims and purposes of each are inherently distinct.  *See, e.g.,* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1311, R. 9 n. 18 (3d ed.1998) ("Generally, punitive damages are not considered to be special damages, . . . but are considered as being completely distinct from compensatory (that is, general and special) damages.").

A court considering what damages should be available to a plaintiff alleging that a constitutional tort has caused the death of the plaintiff's decedent should not conflate the two types of damages—compensatory and punitive—out of deference to state law, or because of the "cruel fact" that alleged unconstitutional torts have resulted in the death of the victim.  Defendant's argument would leave Plaintiff—who is prosecuting a § 1983 action which indisputably survives the decedent—with no effective compensation, other than possibly the proceeds of damages that are inherently not intended to compensate, for the constitutional injuries that caused Mr. Gunn's death.  Such a result is contrary to the compensatory objectives of damages in a § 1983 action and, as in *Lewis*, should not prevail in this matter.  The court should conclude that Plaintiff is entitled to pursue compensatory damages as alleged in Counts One through Three of the Complaint, and that Defendant's motion to dismiss any "survivorship" claims in those counts should be denied at this time.

**B.      Whether Defendant is immune from claims of negligence.**

Defendant next argues that Count VI of the Complaint is due to be dismissed because he is afforded immunity under Ala. Code § 6-5-338.  In particular, he asserts that, because he was acting in his capacity as a police officer, and because "arrests and attempted arrests are classified as discretionary functions[,]" Alabama law provides him with "state–agent" immunity from suits for negligence.  Doc. 42 at 7.  Plaintiff responds that Defendant "has not shown that he was performing discretionary functions, to be able to assert such immunity in the first instance[,]" and that, even if Defendant was merely performing discretionary functions, the allegations of the Complaint establish at least two exceptions to the immunity Defendant claims: that Defendant "acted beyond his discretionary authority or under a mistaken interpretation of the law"; and "that he acted contrary to what is required by the Constitution and laws of the United States, and the Constitution, laws, regulations, etc., of Alabama promulgated for the purpose of regulating the activities of law enforcement officers in Alabama."   Doc. 53 at 39, 46-47.   In reply, Defendant maintains that the allegations of the Complaint establish that he was performing a discretionary function at the time of the alleged torts.  Doc. 54 at 11-12.  Defendant does not appear to address Plaintiff's argument that the Complaint plausibly alleges the applicability of at least two exceptions to the immunity Defendant claims.

Count VI is Plaintiff's claim that Defendant failed to exercise the appropriate standard of care in his actions toward Mr. Gunn, and that such neglect, carelessness, or unskillfulness caused Mr. Gunn's death.  In relevant part, Plaintiff alleges as follows:

In (a) detaining Mr. Gunn without even arguable reasonable suspicion to believe Mr. Gunn was involved in criminal activity, (b) frisking or patting down Mr. Gunn without even arguable reasonable suspicion to believe Mr. Gunn was armed and posed a danger to Smith or others, (c) using any degree of force on Mr. Gunn without even arguable probable cause to arrest Mr. Gunn, and (d) using deadly force (by shooting Mr. Gunn) or (e) even less-lethal force (by tasing and then striking Mr. Gunn) when a reasonable or reasonably skilled or proficient officer in Smith's circumstances could not have believed such force was necessary in the situation at hand, was measured or patterned for the circumstances, or was objectively reasonable, among other actions, Defendant Smith acted beyond his discretionary authority or under a mistaken interpretation of the law, as such discretion is eliminated or restricted by Article I, § 5 of the Constitution of Alabama of 1901, Title 15 of the Code of Alabama, and other Alabama state law.

Doc. 1 at ¶ 240.  Defendant asserts statutory immunity from this claim pursuant to Ala. Code § 6-5-338, which provides, in relevant part, as follows:

Every peace officer . . . who is employed or appointed pursuant to the Constitution or statutes of this state . . . and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

§ 6-5-338(a).

"The restatement of State-agent immunity as set out in [*Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)], now governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a)."  *Ex parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala. 2005) (citing *Swan v. City of Hueytown*, 920 So. 2d 1075, 1078 (Ala. 2005)).  The *Cranman* restatement, in relevant part, provides immunity for a state-agent "when the

conduct made the basis of the claim against the agent is based upon the agent's . . . exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." 792 So. 2d at 405.  The *Cranman* restatement also provides for exceptions to state-agent or peace officer immunity:

> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Id.*

Even assuming, without deciding, that Defendant was engaged in the performance of discretionary functions within the meaning of the statute and *Cranman* during his interactions with Mr. Gunn, the Complaint plainly, and plausibly, alleges both that Defendant's actions were contrary to what is required by the Constitution or laws of the United States, or the Constitution, laws, rules, or regulations of the State of Alabama, and that, even if Defendant believed his actions to be permissible, he was acting under a mistaken interpretation of the law.  *See, e.g.*, Doc. 1 at ¶¶ 234-41.  Defendant's only response to such allegations is to reiterate his insistence that he was performing discretionary functions within the meaning of *Cranman* and § 6-5-338.  *See* Doc. 54 at 11-12.  But, as is established in *Cranman* itself, a peace officer performing a discretionary

19

function who acts under a mistaken interpretation of the law is not entitled to peace officer immunity.  At a minimum, the Complaint plausibly alleges this exception to peace officer immunity and therefore warrants denial of the motion to dismiss, especially considering Defendant's failure to meaningfully address this portion of Plaintiff's argument.

In addition to the foregoing, prudential reasons warrant denying the motion at this time.  As the Alabama Supreme Court has repeatedly recognized, a "motion to dismiss is typically not the appropriate vehicle by which to assert . . . State-agent immunity and . . . normally the determination as to the exercise of such a defense should be reserved until the summary judgment stage, following appropriate discovery."  *Ex parte Bitel*, 45 So. 3d 1252, 1255 (Ala. 2010) (internal quotation omitted).  This is so because proving the applicability of state-agent or peace officer immunity embraces a burden-shifting framework whereby a "State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity."  *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006).  If the state-agent makes such a showing, the burden then shifts to the plaintiff to show that one of the exceptions recognized in *Cranman* applies.  *Id.*  This is necessarily a fact-intensive inquiry that, in most cases, will require a reviewing court to go beyond the four corners of the complaint.  Hence, Alabama law plainly contemplates that, except in the most obvious circumstances, an immunity defense like the one Defendant raises in the instant matter is properly raised in summary judgment proceedings, after the parties have conducted discovery.

Here, Plaintiff's Complaint at least plausibly alleges that Defendant, *inter alia*, acted beyond his authority or under a mistaken interpretation of the law in his actions directed

toward Mr. Gunn.  Thus, even if "at first blush" it appeared that *Cranman* might operate to shield Defendant from liability, because "[i]t is conceivable that [Plaintiff] could prove facts that would show" her entitlement to relief, the motion to dismiss Count VI of the Complaint should be denied.  *See Ex parte Butts*, 775 So.2d 173, 178 (Ala. 2000).

### C.    Whether Plaintiff's Fourteenth Amendment claim is sufficient pleaded.

Defendant asserts that Count Three, Plaintiff's Fourteenth Amendment equal protection claim premised on Defendant's alleged racial profiling of Mr. Gunn, is due to be dismissed because Plaintiff did not allege that "individuals of a race different than Gregory Gunn could have been subjected to search or seizure under the same circumstances, but were not."  Doc. 42 at 9.

Plaintiff alleges the following facts in support of her racial profiling and racially-motivated use of force claim against Defendant: a) that Defendant intended to stop "anyone" he encountered in the neighborhood he was patrolling; b) that the neighborhood is overwhelmingly African-American, thereby indicating Defendant's belief that African-Americans out in that neighborhood at that time are "likely to have been engaged, to be engaged, or to be about to engage in criminal activity"; and c) that Defendant's decision to quickly escalate through the deployment of non-lethal and lethal force against Mr. Gunn, without any reason to believe that he had committed any crime or that he posed a danger to Defendant or anyone else, reflects his belief that African-Americans should be considered armed and dangerous and are therefore subject to lethal and non-lethal measures of force in the absence of any objective reason for doing so.  Doc. 1 at ¶¶ 178-85.

Defendant does not cite to any binding case actually establishing that a similarly-situated, different-race comparator is a required element of *proof* of all racial discrimination claims related to police enforcement, much less that such is a required element of a *sufficiently pleaded* claim of that type.[3]  Instead, Defendant cites *Urbanique Production v. City of Montgomery*, 428 F. Supp. 2d 1193, 1223 (M.D. Ala. 2006), for the proposition that, in order to "prevail on their selective enforcement claim, Plaintiffs must present evidence that individuals of a different race could have been subjected to a search and/or arrested for the same crime, but were not."  Doc. 42 at 10.  Of course, at this stage, Plaintiff is not required to present evidence in support of her claim, and the court is not tasked with deciding whether her claim "prevails."  Moreover, Defendant's argument is curious considering that Plaintiff is not alleging that someone from a different race could have been searched or arrested for "the same crime, but were not."  Instead, she is specifically alleging that there was no crime committed and, moreover, that there was no reasonable, objective basis to believe that any crime had been committed, and thus no basis

---

[3]  Indeed, such a requirement seems untenable and impractical, at least as a matter of sufficiently pleading a claim like Plaintiff's.  How, and why, should Plaintiff be expected to name specific instances of police-citizen interactions that unfold, like the vast majority of all citizen-police interactions, with no tasing, beating, or lethal shooting?  Surely there are myriad instances in which Defendant did not tase, beat, and kill those he encountered out on patrol.  But the likelihood that any such instance could be privy to Plaintiff at the pleading stage is negligible.  After all, it is doubtful that the sort of information Defendant demands—the identities of non-African-Americans who experience largely benign police interactions—would be recorded, stored, and accessible to Plaintiff outside of the discovery process.  Furthermore, how similarly-situated must the comparator sought by Defendant be to Plaintiff?  Would Defendant's standard of pleading require Plaintiff to name a specific Caucasian individual who was confronted by Defendant in the same neighborhood at roughly the same point in the early morning hours?  Plaintiff has plausibly alleged facts from which the court could infer that such an incident would be, statistically, virtually impossible.  And how could Plaintiff know of any such interactions without discovery from Defendant?  Defendant demands too much at the pleading stage.

for any form of law enforcement action against Mr. Gunn.  Hence, as discussed in footnote 3, *supra*, Defendant's demand for a different race comparator seems a poor fit for the specific kind of claim she seeks to present given the unique circumstances of Plaintiff's claim.  In any event, *Urbanique Production* was a case decided on summary judgment and, even though the court remarked that "[t]o state an equal protection claim, Plaintiffs must come forward with evidence" that the defendants' alleged discriminatory actions were not visited upon similarly-situated Caucasians, the court nevertheless held that, in that case, "Plaintiffs have fallen far short of satisfying their burden on summary judgment of establishing a genuine issue of material fact as to the existence of an equal protection violation."  428 F. Supp. 2d at 1224.  Of course, a plaintiff is not required to "come forward with evidence" in order to state any kind of claim, equal protection or otherwise. Accordingly, given the clear holding of the court in *Urbanique Production*, any language appearing to conflate the distinct burdens of *pleading* and *proving* the claim in that case is of little use or persuasion in deciding whether Plaintiff has adequately pleaded her claim in this case.

Instead, pursuant to the standards discussed earlier in this Recommendation, the court is presently tasked with deciding only whether Plaintiff has presented sufficient, plausible facts supporting her claim that Defendant acted against Mr. Gunn due to an impermissible racial profile.  As reviewed above, Plaintiff's allegations, even if not abundant, are sufficient and sufficiently plausible to do so.  To the extent Defendant demands a different race comparator, meaning a non-African-American who was stopped-and-frisked without any reasonable, articulable suspicion to support the stop and who was

not similarly tased, beaten, or killed, or to the extent that the law might actually require one as an element of *proof* of Plaintiff's claim, Plaintiff should be allowed to conduct discovery in order to satisfy that element of her claim. Given the allegations of the Complaint respecting Defendant's specific alleged racial bias, Plaintiff's failure to plead specific instances of Defendant's benign interactions with non-African-Americans should not be fatal to her claim at the pleading stage. *See, e.g., Swint v. City of Wadley, Ala.*, 51 F.3d 988, 1000 (11th Cir. 1995) (finding evidence of specific racial animus on the part of two law enforcement officers sufficient to present a jury question on Fourteenth Amendment claim, despite plaintiffs' failure to present evidence of "racially disproportionate arrests compared to the actual incidence of violations by race" in support of their selective enforcement claim). To hold Plaintiff to such a standard at this stage of the case would elevate formalism over substance, especially considering the compelling allegations actually presented in the Complaint. Accordingly, Defendant's motion to dismiss Plaintiff's Fourteenth Amendment equal protection claim should be denied at this time.

## V.    CONCLUSION

For all of the foregoing reasons, the undersigned Magistrate Judge hereby RECOMMENDS that Defendant's Motion to Dismiss (Doc. 42) be GRANTED-IN-PART and DENIED-IN-PART. In particular, Defendant's motion to dismiss Plaintiff's claims in her individual capacity against Defendant Smith should be GRANTED and those claims should be DISMISSED with prejudice due to Plaintiff's lack of any constitutional right in her continued familial relation with her adult son. In all other respects, Defendant's motion should be DENIED. It is further

24

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **February 7, 2018**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 24th day of January, 2018.


/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE