IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NELLIE RUTH GUNN, *individually and as Administratrix of the Estate of Gregory Gunn, Deceased*, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:16-CV-557-WKW (WO) |
| CITY OF MONTGOMERY, ALABAMA, *et al*. | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On March 2, 2017, Defendant Aaron Cody Smith filed a motion to dismiss. (Doc. # 42.) On January 24, 2018, the Magistrate Judge filed a Recommendation that the motion be granted in part and denied in part. (Doc. # 55.) On February 7, 2018, objections were filed by Defendants City of Montgomery and Ernest N. Finley, Jr. (Doc. # 56), Defendant Smith (Doc. # 57), and Plaintiff Nellie Ruth Gunn (Doc. # 58). Upon an independent and *de novo* review[1] of those portions of the Recommendation to which objection is made, the Recommendation is due to be adopted. *See* 28 U.S.C. § 636(b).

---

[1] A district judge makes a *de novo* determination of those portions of the report to which objection is made. The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(3).

# I. STANDARD OF REVIEW

## A.  Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). This court is "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress."  *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Therefore, a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* "at the earliest possible stage in the proceedings."  *Id*. at 410.  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen*, 511 U.S. at 377.

A motion to dismiss for lack of Article III standing implicates the court's subject matter jurisdiction.  *Duty Free Ams., Inc. v. Estee Lauder Companies*, Inc., 797 F.3d 1248, 1271 (11th Cir. 2015).  Rule 12(b)(1) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of subject matter jurisdiction.  In this case, Defendant's Rule 12(b)(1) motion to dismiss for lack of jurisdiction presents a "facial attack" on the existence of subject matter jurisdiction.  A "facial attack" on

the complaint "require[s] the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Thus, the standard of review for a facial jurisdictional challenge is functionally comparable to the standard of review applicable to Defendant's Rule 12(b)(6) motion to dismiss. *See id.* ("On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion.").

**B.      Rule 12(b)(6) Motion to Dismiss**

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## II.  FACTS[2]

In the very early morning hours of February 25, 2016, Defendant Aaron Cody Smith, a white police officer for the City of Montgomery, Alabama, was working alone on patrol.  He confronted Gregory Gunn, a 58-year-old African-American, as Mr. Gunn was walking home from a card game at a neighbor's house.  Without any basis for reasonable suspicion that Mr. Gunn was involved in criminal activity, Smith approached Mr. Gunn and initiated a "stop and frisk."  Mr. Gunn was not armed, and Smith had no reason to believe he was armed.

Before Smith completed the pat-down, Mr. Gunn fled in the direction of his home.  Smith, still lacking any reasonable suspicion that Mr. Gunn was involved in criminal activity, pursued Mr. Gunn on foot.  During the pursuit, Smith deployed a Taser on Mr. Gunn at least three times, even though Mr. Gunn had not threatened Smith and Smith had no reason to fear for his own safety.  Because the Taser failed to stop Mr. Gunn's flight, Smith struck Mr. Gunn several times with an expandable metal baton.  During the confrontation, Mr. Gunn made no oral threats or aggressive moves, and he never tried to reach for any of Smith's weapons.  Nevertheless, by the time Mr. Gunn reached his next-door neighbor's house, Smith brandished his service firearm and fired seven shots at Mr. Gunn, striking him five times and killing him.

---

[2] The facts set forth in this Memorandum Opinion are as alleged in the complaint.  (Doc. # 1 at ¶¶ 12-82.)

Mr. Gunn died in his next-door neighbor's front yard. When he died, he was only steps away from the home he shared with his mother, Plaintiff Nellie Ruth Gunn.

## III.   PROCEDURAL HISTORY

On July 8, 2016, Plaintiff filed this suit in her individual capacity and as administratrix of the estate of Gregory Gunn. She asserts claims under 42 U.S.C. § 1983 and state law. With respect to the § 1983 claims, Plaintiff seeks to recover personally for loss of companionship and support (Doc. # 1 at ¶¶ 131, 173, 189, 206, 227) and in her representative capacity for the death of her son.[3]

On August 11, 2016, Defendants Finley[4] and City of Montgomery filed a motion to dismiss all Plaintiff's individual and representative-capacity claims. On March 2, 2017, the Magistrate Judge entered a Recommendation that the motion to dismiss be granted as to Plaintiff's individual-capacity § 1983 claims against Defendants Finley and City of Montgomery, and denied as to the remainder of her claims. (Doc. # 41 at 8.) On March 24, 2017, the court adopted the Recommendation of the Magistrate Judge. (Doc. # 47.)

---

[3] "[W]hen a constitutional violation actually causes the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful death statute, Ala. Code [1975] § 6–5–410.9." *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1047 (11th Cir. 2011). Alabama's wrongful death statute allows a wrongful death action to be brought by the representative of the decedent's estate. Ala. Code 1975 § 6-5-410.

[4] Defendant Finley is sued in his individual and representative capacity as chief of police for the City of Montgomery. He is not alleged to have personally participated in the shooting of Plaintiff's son.

On March 2, 2017, Defendant Smith filed a motion to dismiss arguing (1) that Plaintiff lacks standing to sue in her individual capacity for injuries personal to her; (2) that Alabama's survivorship statute, Ala. Code 1975 § 6-5-462, bars survivorship of claims for damages (such as Mr. Gunn's pain and suffering) that arose prior to his death; (3) that state law immunity bars Plaintiff's state law negligence claim against Defendant Smith; and (4) that Plaintiff failed to allege facts sufficient to support her § 1983 claim for racial profiling in violation of the Equal Protection Clause of the Fourteenth Amendment. (Doc. # 42 at 3-11.)

On January 24, 2018, the Magistrate Judge filed a Recommendation that Defendant Smith's motion be granted in part as to claims for damages Plaintiff alleges are personal to her, and that, in all other respects, the Defendant Smith's motion be denied. (Doc. # 55.) Plaintiff objects to the recommendation of dismissal of claims brought in her individual capacity, arguing that this court's March 24, 2017 Order, on which the Magistrate Judge relied in his January 24, 2018 Recommendation, was incorrect. (Doc. # 58.) Defendant Smith objects to the denial of the remainder of his motion (Doc. # 57), and Defendants Finley and City of Montgomery join his objections (Doc. # 56).

## IV.  DISCUSSION

### A.  <u>Plaintiff's Objections</u>

Plaintiff objects to the Magistrate Judge's recommendation of her individual

capacity § 1983 claims against Defendant Smith.  As to those claims, Plaintiff contends that the killing of her son was the result of unconstitutional deprivations of equal protection and due process.  As compensation for the lethal deprivation of her son's constitutional rights, Plaintiff seeks to recover compensatory damages for her own "severe emotional distress and mental anguish and other pain and suffering" caused by her son's death; "lost regular financial support that [her son] had provided her; and [the lost] society and companionship of her son, with whom she had resumed a close family unit for multiple years before his murder."  (Doc. # 1 at ¶¶ 131, 173, 189.)  Citing *Carringer v. Rodgers*, 331 F.3d 844, 849 (11th Cir. 2003) and *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961),[5] Plaintiff argues that § 1983 is deficient for failing to expressly provide for her, as a surviving family member, to recover in her individual capacity for damages she personally suffered as a result of the deprivation of her son's constitutional rights.  While Plaintiff recognizes that state law generally fills the gap where §1983 is silent regarding remedies,[6] she says that the court should not look to state law to remedy the

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[6] 42 U.S.C. § 1988(a) provides:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as

deficiency in this case because Alabama law's failure to recognize such claims[7] in the wrongful death context fails to fully effectuate the purposes of § 1983.

In *Carringer* and *Brazier*, the court of appeals held that § 1983 is deficient in not providing for survivorship of a § 1983 claim for unconstitutional conduct that resulted in death and looked to state survivorship and wrongful death statutes to determine that a civil rights wrongful death claim survives. By order entered March 24, 2017 (Doc. # 47), this court previously held that *Carringer* and *Brazier* are

---

such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

Pursuant to § 1988, courts look to state law where federal civil rights statutes are deficient but only "to the extent that [state law] is currently available to overcome these deficiencies," *Brazier*, 293 F.2d 408, and only if the state law "is not inconsistent with the Constitution and laws of the United States." *Wilson v. Garcia*, 471 U.S. 261, 267 (1985), *superseded by statute in part on other grounds*, 28 U.S.C. § 1658.

[7] It is undisputed that Alabama does not recognize a right of recovery in surviving parents for loss of consortium and the like as a result of the death of the parents' adult children. Rather, under Alabama's wrongful-death statute, Ala. Code 1975 § 6-5-410, a personal representative of a deceased individual can bring suit to recover only punitive damages for "the wrongful act, omission, or negligence of any person, persons, or corporation" that caused the decedent's death. Ala. Code 1975 § 6-5-410(a).

Alabama law does recognize the right of a decedent's spouse to recover for the loss of consortium that the surviving spouse suffered between the decedent's injury and death. *Zimmerman v. Lloyd Noland Found., Inc.*, 582 So. 2d 548, 551 (Ala. 1991). Plaintiff is not a spouse, and she is not asserting loss of consortium for the brief time between the infliction of her son's injuries and his death.

distinguishable because they relate to the survivorship of a decedent's § 1983 action and the ability of the survivor to maintain a § 1983 cause of action for wrongful death, whereas this case involves a different question: whether a § 1983 wrongful death action allows recovery of compensatory damages for injuries *personal to a parent of an adult child* when that child is killed as a result of unconstitutional actions by state officers. In his January 24, 2018 Recommendation, the Magistrate Judge relied on the court's March 24, 2017 holding to recommend dismissal of Plaintiff's individual-capacity claims against Defendant Smith. Plaintiff objects to the Magistrate Judge's Recommendation on grounds that this court's March 24, 2017 holding was incorrect.

In *Brazier*, the former Fifth Circuit addressed "whether death resulting from violation of the Civil Rights statutes give[s] rise to a federally enforceable claim for damages sustained by the victim [of a constitutional violation] during his lifetime, by his survivors, or both." 293 F.2d at 402. Notably, however, *Brazier* did not address "damages to survivors" in the form of loss of consortium and the like. Rather, *Brazier* was concerned with *who, if anyone, had the right to file a civil suit* for damages caused *to the person who was subject to a constitutional violation* that resulted in injury, pain, suffering, and, eventually, death.[8] Specifically, the question

---

[8] The decedent in *Brazier* had allegedly been subjected to two brutal police beatings: one in the course of arrest and one several days later when he was removed from the custody of the jail for the sole purpose of subjecting him to another beating. The decedent's widow filed suit to

before the court was whether (1) the decedent's claims for damages sustained during his lifetime survived his death; and (2) whether damages were recoverable for the decedent's death by unconstitutional means. Looking to state law to fill the gap in the federal statutory scheme, the appellate court noted that then-existing Georgia law provided two separate and distinct causes of action: "[o]ne . . . for survival of the decedent's cause of action; the other for injury inflicted on the survivor." *Id*. at 407 n.15. Specifically, the Georgia statute that the appellate court described as "a cause of action for injury inflicted on the survivor" allowed recovery for "the full value of the life of the decedent." *Id*. The appellate court's statement that "regard has to be taken of both classes of victims" must be considered in its full context, which is as follows:

> Since Georgia now provides for both survival of the claim *for damages sustained during his lifetime* as well as for a right of recovery to his surviving widow and others *for homicide*, see note 15, *supra* [describing Georgia's two distinct causes of action], we need not differentiate between the two types of actions. To make the policy of the Civil Rights Statutes fully effectual, regard has to be taken of both classes of victims. Section 1988 declares that this need may be fulfilled if state law is available. Georgia has supplied the law.

*Id.* at 409 (emphasis added).

*Carringer* likewise arose in Georgia. *Carringer* did not address whether the

_____

recover damages for illegal arrest of her husband, injuries inflicted on her husband in the beating, mental anguish and other punitive damages related to the beatings, and damages for the death of the decedent. *Brazier*, 293 F.2d at 402 n.1.

survivor/plaintiff, the decedent's mother, could recover damages *personal to her*, such as loss of consortium, that arose out of her son's wrongful death at the hands of his surviving spouse, who shot him with her police service revolver. Rather, *Carringer* concerned whether the mother, who was not the administratrix of her son's estate, had standing to bring a § 1983 wrongful death suit to recover "the full value of the death of the decedent" and "funeral, medical, and other necessary expenses resulting from the injury and death of the deceased." *Carringer*, 331 F.3d at 845 and 846 n.1. The court held that, because Georgia law provided that a parent had standing to sue for wrongful death when the spouse was responsible for the death, the mother had standing to sue for the decedent's wrongful death under § 1983. *Id*. at 850. Thus, like *Brazier*, *Carringer* was concerned with *who, if anyone, had the right to file a civil suit* for damages caused to the person who was subject to the constitutional violation, not whether the survivor could sue for damages that she personally suffered incident to the infliction of a constitutional violation on her loved one. *See id*. at 847–48 (holding that, to answer the issue presented, which was whether the mother had a "right to bring a § 1983 action . . . for the wrongful death of her son", the court "must answer two questions: (1) whether a decedent's § 1983 claim terminates upon his death; and (2) if not, where do we look to determine *who may bring a § 1983 claim for the wrongful death of the decedent whose constitutional rights were violated*" (emphasis added)).

Thus, *Brazier* and *Carringer* concerned issues of survivorship, standing, and capacity to bring a § 1983 wrongful death suit (and, in *Brazier*, survival of the decedent's estate's claims for damages suffered in unconstitutional police beatings that took place in the days prior to his death). Both cases held that § 1983 protected the right of survivors, as a class of victims (and as defined by Georgia law), to maintain a cause of action "'*to recover for homicide*.'" *Carrringer*, 331 F.3d at 849 (quoting *Brazier*, 293 F.2d at 409) (emphasis in *Carringer*). *Brazier* and *Carringer* do not, however, address the question presented here: whether the *types of damages* recoverable in such an action include *damages suffered personally by the survivor* as a result of the death of a loved one. Accordingly, despite Plaintiff's heavy reliance on language in *Brazier* and *Carringer* emphasizing that § 1983 requires that "'regard has to be taken of both classes of victims'" (*i.e.*, the decedent's estate, which may have claims for damages inflicted on the decedent prior to death, and the decedent's survivors, who may have claims for wrongful death), *id.* (quoting *Brazier*, 293 F.2d at 409), that language is not particularly useful in answering the question presented in this case. Alabama has no "classes of victims" in a wrongful death action, and in this context "survivor" is nowhere defined in Alabama law.

Plaintiff cites *Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir. 1992), for the proposition that *Brazier* entitles her to recover under § 1983 for injuries personal to her (such as loss of consortium) that were incidental to the constitutional violation

inflicted on her son.  Unfortunately for Plaintiff, *Rhyne* undercuts her argument and fully supports this court's previous holding that Plaintiff's loss-of-consortium damages are not allowed in the Eleventh Circuit, at least not in cases arising in Alabama.

In *Rhyne*, the court held that a mother had standing to recover under § 1983 for "injury to herself caused by her son's death" from lack of medical care at a county jail.  *Id*. at 392.  The court premised its holding on two Fifth Circuit cases: *Brazier* and *Grandstaff v. City of Borger*, 767 F.2d 161, 172 (5th Cir. 1985).  Unlike *Brazier*, *Rhyne* and *Grandstaff* are not binding precedent in this Circuit.  *See Bonner*, 661 F.2d 1206 (adopting as binding precedent in the Eleventh Circuit all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).  The *Rhyne* court stated:

> *Rhyne* does not seek to recover as a representative of her son's estate for the injuries that her son incurred. There has been no administration of her son's estate, and she has not brought this action in her representative capacity. Rather, Rhyne seeks to recover for her own injuries arising out of the wrongful death of her son. The right to such recovery under § 1983 has "generated considerable confusion and disagreement," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991), over which the circuits have divided.  *Compare Jaco v. Bloechle*, 739 F.2d 239, 243 (6th Cir. 1984) and *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984).  The Supreme Court has yet to decide this question. . . .
>
> This court first addressed the issue of wrongful death recovery under § 1983 in *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961) . . . .

Much of Brazier's discussion concerned the survival of the decedent's claim, as opposed to the widow's right to recover for her own injuries arising out of her husband's death. However, the court held that both Georgia's wrongful death and survival statutes were incorporated into federal law under § 1988 . . . .

In *Grandstaff*[, 767 F.2d at 172], this court allowed a father to recover for the loss of society and companionship incurred by the wrongful death of his [adult] son. In reaching this result, the *Grandstaff* court stated simply that "[w]e look to Texas law for guidance on the damages recoverable for [plaintiff's son's] death." *Id*. As Judge Garwood's dissent in *Grandstaff* noted, the plaintiff in *Grandstaff* was not recovering damages that were a "rough proxy for the deceased's damages" [as in *Brazier* where the damages recovered were for the loss of the decedent's life,] but rather was recovering damages for an injury that the parent suffered in his own right. *Grandstaff*, 767 F.2d at 173 n.* (Garwood, J., dissenting).

Under *Brazier* and *Grandstaff*, Rhyne has standing to recover for her own injuries arising out of the wrongful death of her son. There is no dispute that Rhyne is within the class of people entitled to recover under Texas law for the wrongful death of a child. See Tex. Civ. Prac. & Rem. Chapter 71. Both *Brazier* and *Grandstaff* hold that § 1988 incorporates this wrongful death remedy into § 1983, allowing Rhyne to recover under § 1983 for her own injuries resulting from the deprivation of her son's constitutional rights.

. . . .

We recognize the strength of the argument that, unlike survival statutes, wrongful death statutes arguably create new causes of action and therefore ought not to be incorporated by § 1988. . . . *We also acknowledge that allowing suit by the parent in her own right is not an inevitable companion of a wrongful death statute*. At the same time, Texas wrongful death law provides Rhyne with the right to recover for her son's wrongful death and she can recover for injury to herself caused by her son's death. To be more precise, our decisions allow recovery by Rhyne for her injury caused by the state's deprivation of her son's constitutionally secured liberty interests. We need not say more here

because Rhyne was not entitled to go to the jury on the question of whether there was a constitutional violation, as we will explain.

*Rhyne*, 973 F.2d at 390–91 (emphasis added).

Justice Garwood's dissent in *Grandstaff*, cited in *Rhyne*, stated as follows:

Section 1983 recovery is limited to "the party injured," the "citizen" whose federal rights have been invaded. However, in *Brazier* [, 293 F.2d 401], we relied on 42 U.S.C. § 1988 as authority to look to state survival and wrongful death statutes in [§] 1983 actions because "in a very real sense" this "does not do more than create an effective remedy" and "merely assures that there will be a remedy." *Id.* at 409. Given that the nature of the damages awarded the father here were generally not recoverable when sections 1983 and 1988 were enacted . . . and, unlike pecuniary loss or survival damages, can in no "real sense" be regarded as some sort of rough proxy for the deceased's damages, there is room for doubt that [§] 1988 or the *Brazier* rationale warrant such recovery merely because it has now become, over a century later, available under state law. *Whether the father is entitled to such a recovery apart from state law is an open question in this Circuit. See Logan v. Hollier*, 711 F.2d 690 (5th Cir. 1983). Other authorities are divided. *Compare Jackson v. Marsh*, 551 F. Supp. 1091 (D. Colo. 1982) and *White v. Talboys*, 573 F. Supp. 49 (D. Colo. 1983) (no recovery) *with Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984)[9] and *Myres v. Rask*, 602 F. Supp. 210 (D. Colo. 1985) (recovery). In contrast to the protections afforded the spousal and parent-minor child relationships, the common law did not recognize any action for injury to the parent-adult child relationship. . . . Although the Constitution may protect some aspects of the parent-adult child relationship, so that [§] 1983 damages may be recoverable where the illegality of the

---

[9  In 2005, the Seventh Circuit overruled *Bell* and held that parents had no constitutional right to recover for the loss of society and companionship of their adult son where (as in the case of a police shooting) the unconstitutional state action at issue was not specifically aimed at interfering with the familial relationship. The court noted that its reasoning in *Bell* stood alone among the circuits, and that other circuits had rejected the reasoning in *Bell* for compelling reasons. *Russ v. Watts*, 414 F.3d 783, 791 (7th Cir. 2005) ("We therefore overrule our decision in Bell insofar as it recognized a constitutional right to recover for the loss of the companionship of an adult child when that relationship is terminated as an incidental result of state action.").]

> complained of governmental action consists, in whole or in part, of interference with or failure to give proper recognition to that relationship as such . . . it does not necessarily follow that such damages are recoverable where, as here, the parent-adult child relationship is only fortuitously and indirectly related to the wrongdoing.

*Grandstaff*, 767 F.2d at 173 n.* (Garwood, J., dissenting) (emphasis added).

Unlike Texas law, neither the Georgia law described in *Brazier* and *Carringer* nor Alabama law contemplates that a surviving parent may, in conjunction with a wrongful death action, assert damages personal to the surviving parent incident to the death of his or her adult child, such as loss of consortium. *Rhyne* and *Grandstaff*, then, are distinguishable. Moreover, the Fifth Circuit's approach in *Rhyne* does not require, as a matter of federal policy, that the survivor should be allowed to recover for loss of consortium in a § 1983 wrongful death action if the applicable state wrongful death law does not allow it. Rather, as Judge Garwood indicated in his dissent in *Grandstaff*, to which *Rhyne* cited, *Brazier* (upon which *Carringer* relied) assures the right of survivors, as a "class of victims," to a *remedy* — a *cause of action* — to recover for homicide, but the *damages* recoverable in that cause of action were "some sort of rough proxy for the *deceased's* damages." *Grandstaff*, 767 F.2d at 173 n.* (emphasis added). Indeed, in *Robertson v. Hecksel*, 420 F.3d 1254 (11th Cir. 2005), the Eleventh Circuit observed that *Brazier's* "incorporation of Georgia's wrongful death statute was not done in response to a violation of [the survivor's] rights: it was done to remedy the violation of the *decedent's* rights." *Robertson*, 420

F.3d at 1261 (citing *Brazier*, 293 F.2d at 408–09) (emphasis in original).  These are strong suggestions that, even under *Brazier*, the damages a survivor is entitled to recover in a § 1983 wrongful death action are intended to compensate for injuries to the victim, not to compensate for damages the survivor personally suffered incident to the deprivation of the victim's constitutional rights.

Moreover, although Alabama law does not permit a parent to assert her own damages arising out of the death of her adult child, Alabama law is not the starting point for resolving the issue presented in this case.  While it is clear that, under *Brazier* and *Carringer*, § 1983 protects the right of the survivor to maintain a § 1983 wrongful death *cause of action* for damages resulting from death caused by unconstitutional state action, *Carringer*, 331 F.3d at 849 and *Brazier*, 293 F.2d at 409, the *kinds of damages* that are recoverable in such an action are determined by first looking to federal law.  *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1047 n.9 (11th Cir. 2011) (citing *Gilmere v. City of Atlanta, Ga.*, 864 F.2d 734, 739 (11th Cir. 1989)).  That is, "[f]ederal courts are to turn to state law [only] to fill gaps which may exist in federal law," but, "[w]here federal law is sufficient to carry the policies of the civil rights statutes into effect, resort to state law is not necessary."  *Gilmere v. City of Atlanta, Ga.*, 864 F.2d 734, 738 (11th Cir. 1989).

As the court did in *Brazier*, to determine whether a gap exists in federal law,

the court first looks to the text of the applicable statute. Section 1983 provides that "[e]very person who, under color of [state law], subjects, or causes to be subjected, *any citizen of the United States or other person within the jurisdiction thereof* to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable *to the party injured*." 42 U.S.C. § 1983 (emphasis added). Plaintiff's reading of § 1983 suggests that the "citizen . . . or other person" deprived of privileges and immunities and "the party injured" by the deprivation and to whom liability is owed need not necessarily be one and the same person. To the extent Plaintiff has stumbled upon a latent ambiguity in the text of § 1983, practical application of Eleventh Circuit case law is sufficient to resolve that ambiguity.

In *Robertson v. Hecksel*, 420 F.3d 1254 (11th Cir. 2005), a case involving facts very similar to the facts underlying Plaintiff's claims,[10] the decedent's mother sought to recover damages based on injuries she suffered to her relationship with her adult son as a result of her son's death by an unconstitutional police shooting. The Eleventh Circuit held that the mother could not recover because the Constitution does not protect a parent's due process interest in the right of a parent to her

---

[10] In *Robertson*, the plaintiff's son, Corey Rice, was killed when an officer shot him as he fled from a traffic stop after the officer brandished his gun and pointed it at him without cause. *Robertson*, 420 F.3d at 1255–56. Corey Rice's mother, Patricia Robertson, brought § 1983 claims in her individual capacity for "deprivation of a Fourteenth Amendment right to a relationship with her adult son and sought damages for loss of support, loss of companionship, and past and future mental pain and suffering." *Id*. at 1256.

relationship with her adult child, at least where the infringement of the parental association right is only incidental to the defendant's actions against the decedent.

In so holding, the Eleventh Circuit distinguished *Brazier* and *Carringer* as follows:

> [The decedent's mother] argues her claim is controlled by *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961), and *Carringer v. Rodgers*, 331 F.3d 844 (11th Cir. 2003). Because those cases involve the application of 42 U.S.C. § 1988, it will be helpful for us to first briefly discuss how § 1988 works before explaining why *Brazier* and *Carringer* are not relevant to [the decedent's mother]'s claim.
>
> . . . .
>
> *Brazier* and *Carringer* were both instances where state law was used to fill gaps in federal law through § 1988's borrowing provision. [The decedent's mother] would have us also look to [Florida[11]] law through § 1988's borrowing provision to decide her case. Her argument misses the dispositive difference between *Brazier* and *Carringer* and our case. In those cases, the plaintiffs were seeking vindication of the *decedent's* rights under § 1983. Here, [the decedent's mother] alleges a violation of *her* rights. *Regardless of whose rights are being asserted, before § 1983 and § 1988 can come into play, the plaintiff must still establish the existence of a federal right. Because [the decedent's mother] has failed to establish a federal right, we never reach § 1983, let alone § 1988 and state law.*
>
> The plaintiffs in *Brazier* and *Carringer* passed the first hurdle of bringing a § 1983 suit—identifying a federal right—by relying on the rights of the decedent. *Cf.* Steven H. Steinglass, *Wrongful Death Actions and Section 1983*, 60 Ind. L.J. 559, 621 (1985) ("Wrongful death statutes permit survivors to sue when a killing violated their decedent's rights.... [B]oth survival and wrongful death actions assert the identical legal rights of the decedent."). In essence, they were bringing wrongful death suits under federal law. Although the survivors' claims were separate from the claims of the decedents' estates, the *Brazier* and

---

[11] Unlike Alabama law, Florida law would have allowed the decedent's mother to pursue claims for injuries personal to her as a result of the death of her child.]

*Carringer* plaintiffs' claims necessarily required a finding that the decedents' deaths were wrongful in some way. Conversely, whether the decedent's rights in our case were violated has no bearing on the ability of his mother to argue a loss of companionship, because her alleged cause of action is based on a violation of rights personal to her, not rights personal to the decedent. For that reason, *Brazier* and *Carringer* are not controlling.

. . . .

[The decedent's mother]'s belief that *Brazier* and *Carringer* were controlling may have been caused in part by dicta in *Carringer*. Footnote nine of *Carringer* begins by noting that the "right to wrongful death recovery under § 1983 has generated considerable debate amongst our sister circuits" and then compares the *Brazier* analysis with the analysis of the circuits that "allow a claimant to argue that he had a relationship with the deceased that was constitutionally protected and that the homicide of the decedent destroyed that relationship and, therefore, violated the claimant's own protected constitutional rights." *Carringer*, 331 F.3d at 850 n. 9 (citations omitted). This comparison insinuates that the two approaches are in response to the same question, but, for reasons already discussed, they are not.

*Robertson*, 420 F.3d at 1260–62 & 1262 n.9 (third emphasis added).

As a practical matter, Plaintiff's individual § 1983 claims do not serve to vindicate her son's constitutional rights affected by the unlawful searches and seizures, excessive force, and equal protection violations directed at her son. Plaintiff's representative capacity claims adequately serve that purpose. With respect to Plaintiff's individual capacity § 1983 claims, according to the plain language of the complaint, the right Plaintiff is seeking to vindicate, and the violation of which proximately caused her injury, is her own right to maintain her familial

relationship with her son. Specifically, Plaintiff alleges that, as a result of the unconstitutional killing of her son, she suffered "severe emotional distress and mental anguish and other pain and suffering; lost regular financial support that the decedent, Gregory Gunn, had provided her; and lost the society and companionship of her son, with whom she had resumed a close family unit for multiple years before his murder." (Doc. # 1 at ¶¶ 131, 173, 189, 206, 227.) But, despite the fact that Plaintiff does not set forth her individual-capacity § 1983 claim in a separate count of the complaint alleging a Fourteenth Amendment due process claim, in reality, Plaintiff's individual capacity claim is a Fourteenth Amendment due process claim for interruption of her own familial association rights. Therefore, to be sufficient for carrying out the purposes of the civil rights statutes, neither § 1983 nor Alabama law is required to provide for Plaintiff to recover compensation for her own injuries, such as loss of consortium and loss of financial support, that she incurred because her familial relationship with her son was forever interrupted by his death.

Plaintiff attempts to distinguish *Robertson* on grounds that her loss of consortium damages are not couched as familial association claims, but are instead derivative of, and require proof of, the unconstitutional deprivation of her son's constitutional equal protection and due process rights. Plaintiff's attempt to avoid application of *Robertson* through the use of artful pleading is unavailing. Even if Plaintiff's claims are viewed in their derivative context, and not as attempts to

recover for loss of Plaintiff's and/or decedent's familial association rights, the relevant point of *Robertson* is that, between a parent and deceased adult child, there is no constitutionally or federally protected right of companionship and support, particularly where (as here) the defendant's wrongful conduct was not directed at the parent or at the decedent's familial association with the parent. Thus, even though Plaintiff was careful to frame her loss-of-consortium claims as derivative of an unconstitutional deprivation of her son's equal protection and due process rights, Plaintiff still cannot establish that, *to effectuate the purpose of § 1983*, she must be entitled to recover derivative damages for her own "severe emotional distress and mental anguish and other pain and suffering; lost regular financial support that the decedent, Gregory Gunn, had provided her; and lost the society and companionship of her son, with whom she had resumed a close family unit for multiple years before his murder." (Doc. # 1 at ¶¶ 131, 173, 189.)

Accordingly, and for the reasons stated in the Recommendation (Doc. # 55), the Magistrate Judge was correct in finding that, as to Plaintiff's § 1983 claims against Defendant Smith, Plaintiff cannot recover in her individual capacity for injuries she personally incurred as a result of the death of her adult child.[12] Plaintiff's

---

[12] Plaintiff previously objected that the issue is not a question of standing, but of whether Plaintiff has a cause of action under § 1983. However, whether the problem is characterized as a lack of standing or as the nonexistence of a cause of action, the practical outcome is the same: dismissal of Plaintiff's §1983 claims for injuries personal to her. *See Lawrence*, 919 F.2d 1525, 1529 (11th Cir. 1990) (holding that, "[o]n a facial attack" in a Rule 12(b)(1) motion to dismiss for

individual capacity claims against Defendant Smith are due to be dismissed because Plaintiff has not shown that effectuating the purpose of the civil rights laws requires (or, if borrowing from state law, permits) recovery for damages personal to her, such as loss of consortium, incident to the death of her adult son — particularly where, as here, the unconstitutional deprivation of her son's rights was not specifically targeted at the parent-child relationship. *See Robertson*, 420 F.3d at 1262 ("The loss of a child at any age, under any circumstances, is one of the most difficult experiences a parent can endure. While the parent/adult child relationship is an important one, the Constitution does not protect against all encroachments by the state onto the interests of individuals. Instead, it is the province of the [state] legislature to decide when a parent can recover for the loss of an adult child. We will not circumvent its authority through an unsupported reading of the Fourteenth Amendment.").

## B. Defendant Smith's Objections

### 1. Whether Alabama's survivorship statute, Ala. Code 1975 § 6-5-462, bars survivorship of claims for damages (such as Mr. Gunn's pain and suffering) that arose prior to his death

The court has considered Defendant Smith's objections to the Magistrate Judge's finding that Alabama's survivorship statute does not bar recovery of claims for compensatory damages in a § 1983 action for Plaintiff's son's pre-death injuries,

---

lack of subject matter jurisdiction, "a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion — the court must consider the allegations of the complaint to be true").

such as physical pain and suffering and emotional distress. The court finds the reasoning of the Magistrate Judge persuasive.

Defendant Smith's reliance on *Gilliam*, 639 F.3d 1041, is unavailing. In *Gilliam*, the Eleventh Circuit held that, where unconstitutional police conduct did not cause the decedent's death, application of Alabama's survival statute was not contrary to the purposes of § 1983. However, where a defendant's acts *do* contribute to the decedent's death, survival of pre-death injuries *is* important for the dual compensatory and deterrent purposes of § 1983. Otherwise, regardless of how a victim is caused to die, how much suffering he or she endures, how much physical damage is inflicted, how long the constitutional violations last, how many times they occur, and how much time passes until death, pre-death damages would all be zero, thus failing to both compensate and deter. A defendant who is "in for a dime" might as well be "in for a dollar" — that is, so long as death is likely, a defendant would have no cause to stop inflicting pain, or to provide medical assistance, or to otherwise ameliorate his conduct, because the cost to the defendant of all damages from conduct preceding the victim's death would be the same in all circumstances: nothing. Alternatively, contrary to the deterrent purposes of § 1983, a defendant could consider whether to cease his unconstitutional conduct based on his estimate of whether the potential compensatory damages in the event of the victim's survival might outsize the potential recovery in the event of death. For these reasons, and for

the reasons stated in the Recommendation and in the cases cited in the Recommendation (including *Lewis v. City of Montgomery*, No. 2:04-CV-858-WKW, 2006 WL 1761673 (M.D. Ala. June 27, 2006), which explains why *City of Tarrant v. Jefferson*, 682 So. 2d 29 (Ala. 1996) is not consistent with the purposes of federal civil rights law), Defendant Smith's objections are due to be overruled with respect to this issue.

Accordingly, the Recommendation is due to be adopted with respect to the Magistrate Judge's conclusion that Plaintiff may seek compensatory damages from Defendant Smith[13] capacity for pre-death injuries to her son.[14]

---

[13] As the Magistrate Judge noted (Doc. # 55 at 8), Defendant Smith did not clarify whether his motion to dismiss was directed at claims asserted in his official capacity, his individual capacity, or both. In his objection, Defendant Smith seeks to clarify that point by moving for dismissal of official-capacity claims against him on grounds that those claims are duplicative of claims against Defendant City of Montgomery. Nothing in this Memorandum Opinion and Order precludes Defendant from raising that argument in a timely motion. However, the court will not dismiss claims on grounds raised for the first time in an objection. *See* Fed R. Civ. P. 7(b)(1) (providing that a request for court action must be made by motion).

[14] For clarity, the court notes that (1) Defendant Smith did not move to dismiss Plaintiff's claims for punitive damages against him and (2) the Magistrate Judge did not recommend dismissal of Plaintiff's § 1983 punitive damages claims against Defendant Smith. *See Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1047 (11th Cir. 2008) (In a § 1983 action, punitive damages are . . . available from government officials when they are sued in their individual capacities."). Further, to the extent *Lewis* held that no punitive damages could be recovered, it did so in part because Alabama law precludes recovery of punitive damages against a municipality, and thus, limiting § 1983 wrongful death recovery to punitive damages would thwart § 1983's deterrent purposes by effectively conferring immunity on the municipality. At this time, Plaintiff's representative capacity claims for punitive and compensatory damages against Defendant Smith in his individual capacity remain pending.

## 2. Other objections

Defendant Smith objects to the Magistrate Judge's rejection of his arguments that state law immunity bars Plaintiff's state law negligence claim against Defendant Smith and that Plaintiff failed to allege facts sufficient to support her § 1983 claim for racial profiling in violation of the Equal Protection Clause of the Fourteenth Amendment. The court has considered Defendant Smith's remaining objections and finds the reasoning of the Magistrate Judge to be correct.

## C. <u>Defendant City of Montgomery's Objection</u>

The Recommendation did not address a motion by Defendants Finley and City of Montgomery (because they did not have a pending motion to dismiss), nor did it recommend action on Plaintiff's claims against those Defendants. Nevertheless, Defendants Finley and City of Montgomery have filed an objection to the Recommendation. *See* Fed. R. Civ. P. 72 (providing that "[a] party" may file an objection to a recommendation). To the extent Defendants Finley and City of Montgomery adopt arguments presented by Defendant Smith in his objections and motion to dismiss, the objections of Defendants Finley and City of Montgomery are due to be overruled as stated in Section IV.B.

To the extent that Defendants Finley and City of Montgomery present arguments that were not presented to the Magistrate Judge in Defendant Smith's motion to dismiss, the arguments of Defendants Finley and City of Montgomery are

also overruled. For example, although Defendant Smith moved for dismissal of Plaintiff's claims for compensatory damages for Plaintiff's son's *pre-death* injuries, Defendants Finley and City of Montgomery argue that Plaintiff should not be able to recover *any* compensatory damages pursuant to her § 1983 wrongful death claims. Defendants rely heavily on *Brown v. Morgan County, Alabama*, 518 F. Supp. 661 (N.D. Ala. 1981), which the Magistrate Judge discussed in his Recommendation, but which Defendant Smith mentioned for the first time in his reply brief on the motion to dismiss. Defendants argue that the Magistrate Judge improperly distinguished *Brown* on grounds that the Magistrate Judge failed to consider the Alabama Supreme Court's decision in *City of Tarrant v. Jefferson*, 682 So. 2d 29 (Ala. 1996), which allegedly mandates a different result. However, Defendant Smith did not cite *Tarrant* in his motion to dismiss or in his reply brief.

Nothing in this Memorandum Opinion and Order precludes Defendants Finley and City of Montgomery from filing an appropriate motion that contains their argument. However, they may not, in essence, seek dismissal of Plaintiff's compensatory damages claims against them by raising new arguments in an objection to the Magistrate Judge's ruling on another party's motion to dismiss. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").

# V.   CONCLUSION

Accordingly, it is ORDERED as follows:

1.     The objection of Defendant Finley and City of Montgomery  (Doc. # 56) is OVERRULED.

2.     Defendant Smith's objection (Doc. # 57) is OVERRULED.

3.     Plaintiff Nellie Ruth Gunn's  objection (Doc. # 58) is OVERRULED.

4.     The Recommendation of the Magistrate Judge (Doc. # 55) is ADOPTED.

5.     Defendant Smith's motion to dismiss (Doc. # 42) is GRANTED as to Plaintiff Nellie Ruth Gunn's individual-capacity § 1983 claims against Defendant Smith for damages personal to her.  In all other respects, Defendant Smith's motion to dismiss (Doc. # 42) is DENIED.

6.     Plaintiff Nellie Ruth Gunn's individual capacity § 1983 claims against Defendant Smith for damages personal to her are DISMISSED.

7.     This case is REFERRED back to the Magistrate Judge for further proceedings on Plaintiff Nellie Ruth Gunn's remaining claims (*i.e.*, her representative capacity § 1983 claims and her state law claims).

DONE this 11th day of April, 2018.

_____
/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE